**240**

## Walter KIRBY
### v.
### The UNITED STATES.
### No. 393–54.

United States Court of Claims.
Oct. 9, 1957.

John P. Witsil, Washington, D. C., for the plaintiff. Daly & Witsil, Washington, D. C., were on the brief.

Alfred J. Kovell, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

Plaintiff, a veterans' preference eligible having classified Civil Service status, sues to recover the difference between the compensation which he has been receiving in grade GS–12 from August 16, 1953, and the salary of grade GS–15 which he alleges he should have been receiving since August 16, 1953.

Plaintiff alleges that his claim arises under the provisions of the Veterans' Preference Act of June 27, 1944, in that certain benefits conferred on him under sections 12 and 14 thereof were illegally denied him by his employer, General Services Administration. 58 Stat. 387, 390, 5 U.S.C.A. §§ 861, 863. Plaintiff also claims that his rights under the Classification Act of October 28, 1949 (63 Stat. 954, 5 U.S.C.A. Chap. 21, § 1071 et seq.), and the Act of August 24, 1912 (37 Stat. 555, 5 U.S.C.A. § 652), have been violated.

Plaintiff, a civil service employee entitled to veterans' preference, was employed by the War Assets Administration from March 1946 until July 1, 1949. For most of that period he was Chief of the Non-industrial or General Real Estate Branch, Office of Real Property. As branch chief, plaintiff supervised other employees, and his job was classified as grade GS–15. In 1949 the volume of work in War Assets Administration diminished to such an extent that a series of reductions in force took place. Eventually that agency and several other agencies were merged into the newly created General Services Administration pursuant to the Act of June 30, 1949, 63 Stat. 377, 381, providing in section 105 as follows:

"The functions, records, property, personnel, obligations, and commitments of the War Assets Administration are hereby transferred to the General Services Administration. The functions of the War Assets Administrator are hereby transferred to the Administrator of General Services. The War Assets Administration, the office of the War Assets Administrator, and the office of Associate War Assets Administrator are hereby abolished. Personnel now holding appointments granted under the second sentence of section 5(b) of the Surplus Property Act of 1944, as amended, may be continued in such positions or may be appointed to similar positions for such time as the Administrator may determine." 5 U.S.C.A. § 630c.

Section 108 of that act covered the status of transferred employees as follows:

"Subject to other provisions of this title relating to personnel, employees transferred by the provisions of this title shall be deemed to be employees of the General Services Administration and their reappointment shall not be required by reason of the enactment of this Act." 5 U.S.C.A. § 630f.

Pursuant to the above legislation, plaintiff and three other branch chiefs were transferred to General Services Administration following the reductions in force at War Assets Administration and the transfer of the functions of the latter agency to GSA. All four branch chiefs were transferred to the Appraisal Staff Public Buildings Service of General Services Administration and were continued in the new agency in the same grades (GS–15 in each case) held by them in their former positions with WAA. One of the men, Mr. May, became chief of the Appraisal Staff, and Mr. Dibble, another former GSA branch chief, became his deputy. Plaintiff filled the position of a staff appraiser and, except in the absence of Mr. May or Mr. Dibble, performed little if any supervisory or administrative duties in his new job. The record does not indicate the nature of the position to which the fourth man, Mr. Coplan, was transferred.

On April 9, 1953, the Director of Personnel of GSA wrote to the Chief, Position Classification Division, U. S. Civil Service Commission, requesting that the Commission take classification action for the four positions occupied by plaintiff and the other three branch chiefs who had been transferred to GSA from WAA in 1949. The request for classification action was made under Section 501(b) of the Classification Act of 1949, supra. Section 501 of that act provides as follows:

"(a) Notwithstanding section 502, the Commission [Civil Service Commission] shall have authority, which may be exercised at any time in its discretion, to—

"(1) ascertain currently the facts as to the duties, responsibilities, and qualification requirements of any position;

"(2) place in an appropriate class and grade any newly created position or any position coming initially under this Act;

"(3) decide whether any position is in its appropriate class and grade; and

"(4) change any position from one class or grade to another class or grade whenever the facts warrant.

"The Commission shall certify to the department concerned action taken by the Commission under paragraph (2) or (4). The department shall take action in accordance with such certificate, and such certificate shall be binding on all administrative, certifying, pay roll, disbursing, and accounting officers of the Government.

"(b) Any employee or employees (including any officer or officers) affected or *any department may request at any time that the Commission exercise the authority granted to it under subsection (a) and the Commission shall act upon such request.*" [Italics supplied.]

In requesting that the Civil Service Commission take action under subparagraph (b) quoted above, the Director of Personnel of GSA stated as follows:

"Such action is considered necessary because of the unusual nature of the activities of our Appraisal Staff. These activities embrace the appraisal of an extremely wide variety of properties. The Civil Service Commission Standards for the Assessing and Appraising Series, GS–1171–0, and the Valuation Engineering Series, GS–897–0, do not appear to cover positions encompassing such a wide variety of properties.

"There are enclosed descriptions of the four positions listed above. To supplement these descriptions, it is recommended that a representative of the Commission visit GSA to inspect the appraisal reports in our files. These reports graphically reflect the complexities involved in the types of appraisals members of the Appraisal Staff are called upon to perform."

Pursuant to the above request for classification action, a representative of the Civil Service Commission performed an audit of the four appraisal staff positions including the one occupied by plaintiff. On June 29, 1953, the Civil Service Commission notified the Director of Personnel of GSA that certification of the allocation action arrived at by the Commission for the position held by plaintiff in GSA would result in the downgrading of the position so held from GS–15 to GS–12, and that accordingly the certification was being postponed until the employing agency should give plaintiff the 30 days' advance written notice of such action required in the case of an employee having veterans' preference rights. The letter stated that the Commission proposed to certify the allocation action as of August 13, 1953, and that the agency should therefore take prompt action to give plaintiff the required 30 days' notice.

On July 2, 1953, the Director of Personnel for GSA gave plaintiff 30 days' written advance notice that on August 13, 1953, his job classification would be changed from Appraiser GS–1171–15–4875, at $11,800 per annum to Appraiser, GS–1171–12, at $8,040 per annum, pursuant to a notification by the Civil Service Commission that the appropriate classification of plaintiff's *position,* on the basis of tasks performed therein since the transfer was Appraiser, GS–1171–12, and that the action, although adverse to plaintiff's personal interests, was considered an action which would "promote the efficiency of the service." Plaintiff was advised of his right to appeal the classification of his position to the Civil Service Commission under the Classification Act, supra, and also of his right to appeal to the Commission under Section 14 of the Veterans' Preference Act of 1944, supra, if he believed that the downgrading of his position resulted from factors other than the proper classification of his position.

Insofar as the other three former branch chiefs transferred from WAA to GSA were concerned, the Civil Service Commission classified the position held by Mr. May, as chief of the Appraisal Staff, in the grade GS–15; the position

held by Mr. Dibble, as deputy chief, was classified in grade GS–14, and the classification action taken with respect to Mr. Coplan's position is not indicated in the record.

At sometime prior to the request for classification action, Dibble, who was occupying the position of deputy to May, informed GSA that he intended to retire in the spring of 1953. On March 24, 1953, May issued a request for personnel action asking that a Mr. Shankey be transferred from his GS–14 position with the Renegotiation Board, Division of Procurement Affairs, to a position on the Appraisal Staff of GSA, on a 30-day reimbursable detail. Shankey's grade on the Appraisal Staff was to be GS–14, and the title of his former position and the one to which he was to be temporarily assigned in GSA was that of "Industrial Specialist". The reason for the requested transfer was stated to be that a vacancy in the Appraisal Staff was expected to occur by reason of the retirement of one of its members.

On April 21, 1953, and again on May 19, 1953, Shankey's 30-day reimbursable detail was extended for additional 30-day periods. On May 29, 1953, GSA requested that Shankey be permanently transferred from his GS–14 position on the Renegotiation Board to a GS–15 position on the Appraisal Staff of GSA, to fill the vacancy created by the retirement on May 31, 1953, of Dibble. Shankey's actual appointment apparently coincided with the date on which the position vacated by Dibble was certified as being a grade GS–14. On the same date, July 2, 1953, plaintiff was notified that it was proposed to change the classification of his position from GS–15 to GS–12.

Shankey was a nonveteran. At no time prior to the permanent transfer of Shankey to GSA was any consideration given to whether or not plaintiff could qualify for assignment to the deputy chief's position which would fall vacant upon the retirement of Dibble.

Following receipt of the July 2, 1953 notice of proposed adverse action, plaintiff took a timely appeal. One aspect of his appeal alleged that his rights under the Veterans' Preference Act of 1944, supra, had been violated in that he was not advised in full of the reasons for his demotion; that he had not received a proper notice of adverse action, and that in any event he was entitled to reassignment to the GS–14 position left vacant by Dibble's retirement, in preference to Shankey, a nonveteran.

The other aspect of plaintiff's appeal dealt with the classification action itself and urged that the classification action of the Commission was not based on the actual duties and responsibilities of the position held by plaintiff but rather on "administrative action personal to" the plaintiff; that a full description of plaintiff's duties and responsibilities was never given to the Commission, and that no proper application of the Commission's position classification standards had been made to the duties and responsibilities of plaintiff's position.

Insofar as plaintiff's appeal was concerned with the merits of the new classification of his job, the appeal was considered by the Chief of the Classification Audit Section, Position Classification Division, Civil Service Commission, and on October 23, 1953, plaintiff was notified that a review of the facts in his case did not warrant classification of the *position* held by him to a grade higher than GS–12. Plaintiff was advised that he might appeal to the Commission's Board of Appeals and Review.

Plaintiff's appeal under the Veterans' Preference Act of 1944, supra, was considered by the Chief Law Officer of the Commission. A hearing was held on October 14, 1953, on this aspect of plaintiff's appeal, and on November 20, 1953, plaintiff was advised that the downgrading action was affirmed. The Chief Law Officer prepared an analysis and findings on plaintiff's appeal. On the matter of whether under section 14 of the Veterans' Preference Act the notice of proposed downgrading should have contained a statement setting forth in full the reasons for the proposed action,

the Chief Law Officer concluded that such a requirement applied only where the reduction in grade was the result of some action other than a classification decision. Although plaintiff urged in his appeal that considerations other than mere job allocation or position classification were involved in his downgrading, the Chief Law Officer found that plaintiff had failed to establish the existence of any such factors; that no personal bias was present in the downgrading action, and that the difference in the duties and responsibilities of the position which plaintiff had held at WAA and the position he held in GSA lay in the fact that the GSA position to which plaintiff had been transferred in 1949 contained few, if any, of the administrative and supervisory responsibilities which had been a part of his WAA job and had justified the GS-15 grade allocated to that former position. In plaintiff's GSA position, he was found to work merely as a staff appraiser with no supervisory or administrative duties except when the chief or assistant chief of the office was absent.

With respect to plaintiff's claim that under the provisions of the Veterans' Preference Act of 1944, supra, he should have been reassigned to the GS-14 position on the Appraisal Staff to which position a nonveteran from outside the agency was appointed on the same date that plaintiff received his notice of proposed downgrading, the Chief Law Officer of the Civil Service Commission merely stated that the claim was "without merit" and that

*"There is no law or regulation of the Commission which requires such a reassignment in a classification case such as that presently being considered.* The appellant's contention that his retention rights under the reduction in force regulations have been adversely affected through his demotion and the simultaneous appointment of a non-veteran by reason of placing him in a vulnerable competitive level, is not a matter for consideration in the instant

appeal nor it is germane to the issue at hand." [Italics supplied.]

On April 27, 1954, the Civil Service Board of Appeals and Review affirmed the adverse decision made on plaintiff's appeal under section 501(b) of the Classification Act of 1949 from the decision of the Commission's Position Classification Division. Plaintiff was advised that a review of the duties of the job then held by him indicated that it did not warrant a grade in excess of GS-12.

On May 4, 1954, the Chairman of the Civil Service Board of Appeals and Review affirmed the decision of the Chief Law Officer, sustaining under Section 14 of the Veterans' Preference Act, the action of GSA downgrading plaintiff from GS-15 to GS-12 as a result of classification action. With respect to the notice of proposed downgrading, the Board stated that the notice was of the type provided for in the Federal Personnel Manual and was adequate to enable plaintiff to prepare and submit his defense to the proposed action.

With respect to plaintiff's claim that he should have been reassigned to the GS-14 position which was given to the nonveteran transferred to the Appraisal Staff, the Board of Appeals and Review merely repeated the statement made by the Chief Law Officer that "There is no law or Commission regulation which requires such a reassignment in a classification case of this nature."

On June 9, 1953, the Board of Appeals and Review wrote to plaintiff refusing to reopen the Veterans' Preference Act aspect of plaintiff's appeal.

We are of the opinion that the Civil Service Commission was correct in its conclusion that plaintiff's rights under section 14 of the Veterans' Preference Act of 1944, supra, were not violated with respect to the types of notices given him in connection with his downgrading. On the other hand, there appears to be considerable merit to plaintiff's contention that his rights under section 12 of the Veterans' Preference Act were infringed when, on the occasion of the

downgrading of plaintiff's position, he was not reassigned to the GS–14 position to which a nonveteran was transferred from another government agency on the day plaintiff was notified of the proposed downgrading.

Section 12 of the Veterans' Preference Act of 1944, supra, provides as follows:

"In any reduction in personnel in any civilian service of any Federal agency, competing employees shall be released in accordance with Civil Service Commission regulations which shall give due effect to tenure of employment, military preference, length of service, and efficiency ratings: *Provided,* That the length of time spent in active service in the armed forces of the United States of each such employee shall be credited in computing length of total service: *Provided further,* That preference employees whose efficiency ratings are 'good' or better shall be retained in preference to all other competing employees and that preference employees whose efficiency ratings are below 'good' shall be retained in preference to competing nonpreference employees who have equal or lower efficiency ratings: *And provided further, That when any or all of the functions of any agency are transferred to, or when any agency is replaced by, some other agency, or agencies, all preference employees in the function or functions transferred or in the agency which is replaced by some other agency shall first be transferred to the replacing agency, or agencies, for employment in positions for which they are qualified, before such agency, or agencies, shall appoint additional employees from any other source for such positions."* [Italics supplied.]

The Civil Service regulations issued to carry out the above-quoted section 12 are found in Part 20 of Title 5 of the Code of Federal Regulations.

Upon the liquidation of War Assets Administration and the consolidation of its remaining functions with the newly formed General Services Administration, plaintiff, a veterans' preference eligible with civil service status, was transferred to the new agency in accordance with section 12 above and the Civil Service Regulations issued thereunder. The position to which plaintiff was transferred was not that of a branch chief, but rather that of an appraiser. However, the grade and pay of the new position was the same as the job which plaintiff had occupied in WAA, i. e., GS–15. Defendant says that this was because the new General Services Administration had not yet had time to properly classify its many positions. Over three years later, in the spring of 1953, GSA got around to the problem of securing proper classifications for the positions occupied by plaintiff and the three other former WAA branch chiefs on the GSA Appraisal Staff, and it requested Civil Service Commission to perform this function and certify the classifications arrived at. When this was done, the position occupied by plaintiff turned out to warrant only a GS–12 rating, whereas the position occupied by Mr. May as staff chief was given a GS–15 rating, and the position occupied by Mr. Dibble was given a GS–14 rating. By the time the GS–14 position was certified by Civil Service on July 2, 1953, the WAA transferee, Dibble, had retired, and the position would have been vacant had not a nonveteran been transferred to GSA and given the job. If the Appraisal Staff positions had been properly classified in 1949 when plaintiff was transferred to GSA in connection with the liquidation and consolidation of WAA, plaintiff, a veterans' preference eligible holding a grade GS–15, would have been entitled under section 12, supra, to be assigned to the GS–14 job rather than to the GS–12 job, in preference to a nonveteran, if he possessed the necessary qualifications therefor, and to appeal from any decision adverse to his claim to that job. We are of the opinion that plaintiff did not lose his right to be reassigned to the GS–14 position in 1953 in preference to a nonveteran, if he was qualified to fill

it, simply by virtue of the fact that three years after his transfer to GSA the Civil Service Commission, under the provisions of the Classification Act of 1949, supra, allocated three of the four positions in question to lower grades than the ones held by the transferee in the liquidated agency in 1949. In this connection we note that section 1104 of the Classification Act of 1949, supra, provides as follows:

"Nothing in this Act shall be construed to affect the application to officers and employees to whom this Act applies of the veteran-preference provisions in the Civil Service Act, as amended, and the Veterans' Preference Act of 1944, as amended."

We have had occasion in the past to rule on the applicability of section 12 of the Veterans' Preference Act of 1944 to demotions, as distinguished from discharges, of veterans. In Adler v. United States, 129 Ct.Cl. 150, reductions in grade of certain supervisory employees occurred as a result of certain reductions in force elsewhere in the Navy Department. The court held, that although section 12 expressly gives preference rights to a veteran in the case of a "release" incident to a reduction in force, Congress undoubtedly intended to include within the term "release" a release from a position carrying a higher grade to a position carrying a lower grade, i. e., a demotion. In Parks v. United States, 147 F.Supp. 261, 137 Ct.Cl. ——, the court held that where the demotion of a veteran preference eligible was brought about by a reorganization rather than by a reduction in force, that employee was entitled to the protection of section 12 of the Veterans' Preference Act of 1944 and the Civil Service regulations thereunder.

We are of the opinion that plaintiff's demotion was incident to a reduction in force. As stressed by the Civil Service Commission, by GSA, and by the defendant, the change in the classification and grade of plaintiff's position in GSA from GS–15 to GS–12 was not based on any finding that plaintiff's qualifications and abilities were such that he could only perform the duties and responsibilities of the GS–12 position on the Appraisal Staff of GSA, but rather resulted from the fact that the particular position in which plaintiff found himself after the merger of WAA with GSA, required only the performance of duties and responsibilities of a GS–12 level. A certain amount of confusion has been injected into the situation by reason of the fact that the classification or reclassification of plaintiff's position in GSA was not undertaken until more than three years after he was transferred to that position at the same grade he had held at GSA, and during that interim period, plaintiff continued to have the grade and pay of GS–15. If we disregard the time element, what actually happened to plaintiff was that upon the liquidation of War Assets Administration in 1949, a reduction in force took place in the division in which plaintiff served as a branch chief, GS–15, supervising a number of appraisers. Because of his higher retention points reflecting length of service, civil service status, and veterans' preference, plaintiff was not reached for dismissal, but was transferred to GSA and placed in a position which was in fact a lower grade position than the one he had held in the liquidated agency. Accordingly, plaintiff's ultimate downgrading was the result of either a reduction in force in War Assets Administration, or the result of his transfer from a liquidating agency; and in either event, his transfer comes within the terms of section 12 of the Veterans' Preference Act of 1944, supra. Upon such transfer, GSA would have had to consider plaintiff's right to the highest grade job in relation to his old job that he was qualified to perform, in preference to an employee whom they wished to hire from some other source than the liquidating agency. The fact that the choice between plaintiff and an outside nonveteran employee arose some three years after the transfer and the merger of the two agencies, because of the delay in securing proper classification for GSA.

positions, does not deprive plaintiff of his rights under section 12 of the Veterans' Preference Act.

We are of the opinion that on the authority of the decisions of this court in Adler, supra, and Parks, supra, plaintiff was entitled to "bump" the nonveteran hired from outside the agency if plaintiff possessed the necessary qualifications to perform the duties and responsibilities of the GS–14 position.

Defendant contends that the nonveteran hired from outside the agency and given the GS–14 position vacated by Dibble, was better qualified to perform the duties of the position by virtue of his experience as a "valuation engineer." No such justification for denying plaintiff's appeal was advanced at the time he sought to enforce his rights to t,hat position or at the times of his appeals to the Civil Service Commission. We are of the opinion from the record that GSA never considered the matter of whether plaintiff was qualified to fill the GS–14 position left vacant upon the re-tirement of Dibble. On the contrary, instead of considering plaintiff's possible reassignment to the position of deputy chief, which position GSA must have known would receive a higher grade as a result of the pending classification action than the position of staff appraiser occupied by plaintiff, GSA made arrangements to employ in a permanent capacity a nonveteran from another agency. When plaintiff was notified of his downgrading and immediately claimed the right to reassignment to the job just given to Mr. Shankey, no serious consideration was given to his claim. All of plaintiff's appeals regarding his right to reassignment to the GS–14 position in preference to Mr. Shankey were answered by the mere statement that there existed "no law or regulation of the Commission which required" that he be reassigned to that job "in a classification case" such as was under consideration. Apparently the reviewing officials were unaware of the existence of section 1104, quoted above, of the 1949 Classification Act, and also mistakenly supposed that

section 12 of the Veterans' Preference Act had no application to the action taken in plaintiff's case.

Inasmuch as plaintiff's right to be reassigned to the grade GS–14 position before a nonveteran from outside the agency could be employed to fill it, was never actually considered on its merits by GSA or by the Civil Service Commission, we are of the opinion that plaintiff's demotion to grade GS–12 was, under the facts and circumstances of this case, procedurally defective. It was not until plaintiff brought his suit in this court that defendant gave any consideration to plaintiff's actual qualifications for the GS–14 job which he was denied, and, although we do not believe that defendant can remedy the procedural defect noted above by testimony before this court relating to plaintiff's qualifications, we are of the opinion that the testimony offered with reference thereto is not convincing and that defendant has not established that plaintiff lacked sufficient qualifications to perform the duties and responsibilities of the GS–14 position.

The GS–14 position in question required the incumbent to act as deputy to the chief of the Appraisal Staff. Approximately 30 percent of the deputy's time was spent in supervising the work of nine appraisers. The appraisers, whose work the deputy was required to supervise, performed appraisals of industrial projects and non-industrial projects. The deputy was also required to perform such appraisals himself when not occupied with supervisory and administrative work. Up to the time the downgrading took place, plaintiff's work as an appraiser had been largely limited to appraising non-industrial projects. Prior to his transfer to GSA, plaintiff had functioned as a branch chief in War Assets Administration and for several years had supervised the work of approximately seven persons. After plaintiff's transfer to GSA, he continued to perform supervisory and administrative duties on the Appraisal Staff whenever the chief or the deputy chief was absent.

and, although he did not perform industrial appraisals himself, he must have acquired considerable knowledge of the manner in which such appraisals were made. Subsequent to the downgrading action on July 2, 1953, the chief of the Appraisal Staff suggested that a *promotion* might be secured for plaintiff in the future if plaintiff demonstrated his ability to appraise industrial projects. Sometime thereafter, May assigned an industrial project to plaintiff for appraisal, and, with some guidance, plaintiff did perform the appraisal satisfactorily. There is no indication in the record that Shankey, the nonveteran "industrial specialist" hired to fill the GS–14 position had had any experience performing non-industrial appraisals. Under these facts and circumstances, we are of the opinion that plaintiff was sufficiently qualified for the GS–14 position of deputy chief, within the meaning of section 12 of the Veterans' Preference Act, and was entitled to be reassigned to that position in preference to the nonveteran who was placed in that position.

We are of the opinion that plaintiff's rights under section 12 of the Veterans' Preference Act of 1944, supra, have been violated and that he is entitled to recover. Inasmuch as his enforceable rights in this case relate not to the GS–15 position but rather to the GS–14 position, his recovery will be limited to the difference between the pay of the GS–14 position and the GS–12 position from the date he first began receiving the reduced pay to the date of settlement, at the rate of pay applicable to the two positions during that time. Plaintiff is entitled to recover and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c) of the Rules of this court, 28 U.S.C.A.

It is so ordered.

JONES, Chief Judge, and MADDEN and WHITAKER, Judges, concur.

LARAMORE, Judge, took no part in the consideration and decision of this case.