Whitakek, Judge,
delivered the opinion of the court:
This is a suit by a civil service employee for pay over and above what has been paid him for the period April 26, 1953 to November 18, 1953, during which time plaintiff was illegally separated from his position in the Department of Commerce, because he says he would have received an in-grade promotion had he not been illegally separated. He also sues for annual leave which, he says, has been denied him.
Prior to his separation plaintiff was employed in the National Production Authority, an emergency agency within the Department of Commerce, as a Commodity Industrial Analyst, grade GS-9, at an annual salary of $5,310. On April 26, 1953 plaintiff was separated, due to a reduction in force, and his position was abolished.
*191 Plaintiff had accumulated 739 hours of annual leave during his period of employment with the Government; and, therefore, pursuant to the Lump Sum Payment Act of 1944, 58 Stat. 845, 5 TJ.S.C. § 61(b), 1952 ed., plaintiff received at the time of his separation a payment in the net amount of $1,509.22, being $1,886.52, the gross value of the 739 hours computed at the salary plaintiff was receiving on the date of his separation, less $377.30 which represented the amount of Federal income taxes due thereon.
Plaintiff appealed his separation to the Civil Service Commission, which, after investigation, informed the Department of Commerce and the plaintiff that there were four positions, at the grade GS-4, to which plaintiff had the right of reassignment under the applicable Retention Preference Regulations. The Department, however, found that of the four positions mentioned by the Commission, three had been abolished either on or before September 27,1953, and, in view of his age, plaintiff was not considered qualified for the fourth position, since it required heavy physical labor. However, the Department stated:
Notwithstanding the foregoing facts * * * arrangements have been made to restore Mr. Pechette to duty to a vacancy as clerk, GS-4, at the National Bureau of Standards. Mr. Pechette will be paid at the top of GS-4, and it is expected that he will enter on duty within the next two weeks. Any claim for back pay will, of course, be subject to adjudication by the Comptroller General.
Pursuant to this letter, plaintiff was reinstated on November 18, 1953, as a GS-4, Property and Supply Clerk. In the light of this, the Civil Service Commission took no further action on plaintiff’s appeal, since it considered the reinstatement “to represent adherence to the requirements of the Retention Preference Regulations.”
The plaintiff duly filed a claim with the Comptroller General for compensation for the period from April 26 to November 18. After computation, the plaintiff was issued a check in the net amount of $54.95 as a complete settlement of the Government’s liability. This amount was computed in the following manner:
*192 Salary due April 27 to September 26, 1953, at $3,655.00 p.a. (GS-4)_$1,546.38
Lump-sum payment for annual leave September 27 to November 17, 1953; 296 hours at $3,655.00 p.a. (GS-4)_'_ 520.30
2, 066. 68
Less lump-sum payment for leave previously made_ 1, 886. 52
Amount due_ 180.16 Less:
Retirement on $1,546.38_$92. 78
Federal tax on $180.16_ 32. 43 125. 21
$54. 95
The Comptroller General’s computation is in error in this respect. Plaintiff was entitled to salary from April 27 to November 17, 1953, the period of his illegal separation. Instead, the Comptroller General allowed him salary only from April 27 to September 26, 1953, and then allowed him animal leave from September 27 to November 17. There was no justification for this. The result is plaintiff has been deprived of credit for 296 hours of annual leave to which he is entitled.
However, the defendant’s deduction of the lump-sum leave payment of $1,886.52 in its back-pay settlement with plaintiff was not wrongful. Plaintiff’s receipt of this payment on his separation on April 26, 1953, was required by 5 TJ.S.C. § 61 (b), 1952 ed. When plaintiff was restored after the Civil Service Commission found that his separation was not justified, he was no longer entitled to this lump-sum payment, but he was entitled to the pay of the position to which he was reinstated from the time of his separation to the date of his restoration. Leverette v. United States, 135 C. Cls. 207. Upon the deduction of this lump-sum payment from the salary to which he was entitled, the entire accumulation of 739 hours should have been restored to the plaintiff’s leave account. But, as we stated in McTiernan v. United States, 135 C. Cls. 82, this court does not have the authority to direct that plaintiff’s account be re-credited with this improperly reduced annual leave. We can only assume that, in the light of this opinion, the agency will re-credit the account. If not, an action will lie in plaintiff’s favor when this leave is denied him.
*193 Nor was tbe defendant in error in determining plaintiff’s back pay at tbe salary rate prescribed for a GS-4, tbe rate for tbe position to which he was reinstated. The Act of June 10,1948, 5 TJ.S.C. § 652(b) (3), 1952 ed., which governs the amount of plaintiff’s recovery, reads as follows:
Any person removed or suspended without pay in a reduction in force who, after an appeal to proper authority, is reinstated or restored to duty on the ground that such removal or suspension was unjustified or unwarranted shall be paid compensation at the rate received on the date of such removal or suspension, for the period for which he received no compensation with respect to the position from which he was removed or suspended, less any amounts earned by him through other employment during such period, and shall for all purposes except the accumulation of leave be deemed to have rendered service during such period. A decision with respect to any appeal to proper authority under this paragraph shall be made at the earliest practicable date. [Italics ours.]
The phrase “with respect to the position from which he was removed or suspended” clearly refers to the position to which the plaintiff had an enforceable right on the date of his separation. Cf. Kirby v. United States, 140 C. Cls. 92. Plaintiff’s only right was to the GS-4 position to which he was reinstated, and not to the GS-9 position, which was abolished on April 26. Therefore, any claim for back pay at the salary rate prescribed for a GS-9 is untenable.
Neither is plaintiff entitled to any statutory or in-grade pay increase which he would have received if he had not been separated. The statute says he is entitled to recover “at the rate received on the date of such removal.” That precludes subsequent salary increases.
Plaintiff also sues for an alleged overpayment of Federal taxes in the amount of $1,021.58 for the year 1953. Plaintiff, however, has not filed a claim for refund for that year, which is a prerequisite to suit. The claim for refund which is mentioned in the trial commissioner’s report was for the year 1954.
It results that plaintiff’s petition must be dismissed.
It is so ordered.
*194 Fahy, Circuit Judge, sitting by designation; Laeamobe, Judge; MaddeN, Judge; and JONES, Chief Judge, concur.
FINDINGS OE FACT
The court, haying considered the evidence, the report of Trial Commissioner Donald E. Lane, and the briefs of counsel, makes findings of fact as follows:
1. William W. Pechette, hereinafter referred to as the plaintiff, is a citizen of the United States, residing in Cincinnati, Ohio.
2. Since July 18, 1939, the plaintiff has been employed in various positions in the Civil Service of the United States, with performance ratings of satisfactory and/or excellent.
3. During the period from May 28,1951, to April 26,1953, the plaintiff was employed by the defendant as a Commodity Industrial Anaylst, grade GS-9, at an annual salary of $5,310, in the National Production Authority, an emergency agency within the United States Department of Commerce, the latter being hereinafter referred to as the Department.
4. On March 26, 1953, the Department notified the plaintiff, that on account of a reduction in force, he would be separated from his position in that Department on April 26, 1953.
5. On April 23, 1953, the Department wrote the plaintiff, in part, as follows:
* * * as search has now been made throughout the Department of Commerce and the National Production Authority to determine the availability of a position for which you are qualified which is occupied by an employee with lower retention priority.
We regret to advise you that there is no position available for you and you will be separated as of the date specified in your reduction in force notice. * * *
6. Plaintiff was thereupon separated from his position with the Department as of the close of business April 26, 1953.
7. Under date of May 4, 1953, plaintiff appealed to the United States Civil Service Commission, hereinafter referred to as the Commission, stating as follows:
On March 26th, I received a reduction-in-force notice granting me the usual 30 days, after which time I *195 would be separated from my position. It was told to me by personnel that an effort would be made to find a suitable position for me and that a reasonable offer would be made to me.
On April 23d, I received another letter informing me that “a search has now been made throughout the Department of Commerce and the National Production Authority, to determine the availability of a position for which you are qualified which is occupied by an employee with lower retention priority. We regret to advise that there is no position available for you and you wiil be separated as of the date specified in your reduction-in-force notice”.
I have been employed since July 18, 1939, in the Department of Agriculture and the Department of Commerce and have at all times received Satisfactory or Excellent ratings, while acting in the following positions:
Shipping & Receiving Clerk, Purchasing Agent, Warehouse Inspector, Warehouse Examiner, Marketing Aide, Marketing Specialist, Packaging Inspector, Packaging Supervisor, Dried Egg Inspector & Supervisor, Chief Clerk in Charge of Canning Subsidy Program, Field Representative, Commodity Industry Analyst, Industrial Specialist.
Having performed these duties creditably, I feel that there are many positions in Commerce that I am capable of filling and certainly know of six positions in the Containers and Packaging Division now held by “persons with lower retention priority”, which positions I could fill.
It has also been called to my attention that several temporary appointments have been made recently in the Department of Commerce.
As I am a career employee with 14 years, 8 months Service, without a break, with only 4 months more to attain the 15-year retirement level, I am particularly desirous of continuing in active duty until that time and would be willing to take a reasonable cut in grade and salary.
At present, I have approximately 93 days of Annual Leave, which, if given to me in time (which has been done in many cases), would extend beyond my retirement date. However, this courtesy has been denied me and I am to be paid in a lump sum for this leave.
Therefore, I am appealing my case and ask for that which has been granted to others in the past.
*196 8. In a letter dated September 10, 1953, the Department again wrote the plaintiff, stating in part, that:
* * * there is no position in the Department, in this commuting area, occupied by an employee in Retention Preference Group III, for which you are entitled to consideration under the Civil Service Rules and Regulations. * * *
9. In response to the plaintiff’s appeal of May 4,1953, the Commission, in a letter directed to the plaintiff, dated September 21,1953, stated as follows:
Reference is made to your appeal protesting the reduction in force action taken in your case by the National Production Authority, Department of Commerce.
As a result of our investigation it appears there are positions at the grade GS-4 level to which you apparently have rights of reassignment under the Retention Preference Regulations.
We are requesting the Department to take corrective action to bring the reduction in force in which you were involved into full accord with the provisions of the regulations.
A copy of our letter on this matter to the agency is enclosed.
10. The copy of the Commission’s letter to the Department enclosed in the Commission’s letter to the plaintiff under I date of September 21, 1953, stated as follows:
Reference is made to the case of Mr. William W. Pechette, a former employee of the National Production Authority, who has appealed to the Civil Service Commission the reduction m force action taken concerning him.
Mr. Pechette, a Commodity-Industry Analyst, GS-9, in retention sub-group II-B (and in I-B at grade GS-7), was notified of reduction in force March 26, 1953, and was subsequently separated with no offer of reassignment.
Our investigation indicates that there are positions to which Mr. Pechette apparently has rights of reassignment under the Retention Preference Regulations. Among these positions are those of Property and Stock Control Clerk, GS-4, occupied by John Higgins, sub-grade III-A, Procurement Clerk (Correspondence), GS-4, occupied by Donald Menard, subgroup III-A, *197 and Procurement Clerk, GS-4, occupied by Loretta O’Brimski, subgrade IIX-B, in the Bureau of Standards; and General Supply Clerk, GS-4, occupied by Eloy Tafoya, subgroup IX-A, in tlie Office of tlie Assistant Secretary of Commerce.
We must therefore advise you that the reduction in force action in regard to Mr. Pechette is not approved.
It is requested that you inform this office within ten days of the date of this letter of the corrective action taken in this case.
11. On November 2,1953, the Department wrote the Commission as follows:
This is in reply to your letter of September 21 (X: W: CH: gdb), concerning Mr. William W. Pechette, a former employee of the National Production Authority, who has appealed his reduction-in-force notice dated March 26,1953.
The Personnel Officer of the National Bureau of Standards informs me that the position of Procurement Clerk (Correspondence), GS-4, held by Donald Men-ard, Subgroup III-A, and the position of Procurement Clerk, GS-4, occupied by Loretta O’Brimski, Supgroup XII-B, were abolished effective September 27, 1953, when those employees transferred to the Department of the Army in connection with the transfer of ordnance research and development activities. The position of Property and Stock Control Clerk, GS-4, held by John Higgins, Subgroup XII-A, was abolished on August 7,' 1953, when Mr. Pliggins resigned.
The position of General Supply Clerk, GS-4, occupied by Eloy Tafoya, Subgroup II-A, in the Office of the Assistant Secretary of Commerce, is a heavy duty type position requiring loading and unloading trucks. In view of the strenuous physical requirements of this position and Mr. Pechette’s age, he is not considered qualified to perform the arduous duties of this position.
Notwithstanding the foregoing facts, however, arrangements have been made to restore Mr. Pechette to duty to a vacancy as Clerk, GS-4, at the National Bureau of Standards. Mr. Pechette will be paid at the top of GS-4, and it is expected that he will enter on duty within the next two weeks. Any claim for back pay will, of course, be subject to adjudication by the Comptroller General.
12. In a letter to the plaintiff dated November 18, 1953, the Commission stated, in part, as follows:
*198 In line with our finding under date of September 21, 1953, that you were entitled to reassignment to a position at the GS-4 level in this commuting area, we were informed by the Department under date of November 2, 1953, that action is being taken to restore you to duty as a GS-4 employee in the National Bureau of Standards. We are also informed that, of the positions mentioned by us in our decision on your appeal, all but those of Eloy Tafoya are no longer available in the Department of Commerce. Since the Tafoya position is certified as being a heavy duty position, it is our view that you would not be qualified for the assignment under the Detention Preference Regulations.
In view of continuing nature of a number of the positions cited in our decision of your appeal, the Department informs us that you may. file a claim for salary representing the period of service to which you are entitled in these positions from the date of your improper separation in April of this year.
Since the foregoing is considered to represent adherence to the requirements of the Retention Preference Regulations in your case, you are informed that this office considers further action on your appeal as unnecessary.
13. On November 18, 1953, the plaintiff was reemployed by the Department and reported for duty as a grade GS-4, Property and Supply Clerk, at an annual salary of $3,655, in the National Bureau of Standards.
14. On April 26, 1953, when the plaintiff was separated from his position in the Department, he had 739 hours of accumulated and unused annual leave to his credit for which he then received a lump-sum payment in the net amount of $1,509.22, being $1,886.52, the gross value of the 739 hours of accumulated annual leave, less $377.30, the amount of income taxes due theron, as set forth in a “Pay Roll Change Slip”, on Standard Form No. 1126a.
15. The plaintiff duly filed his claim with the Comptroller General for compensation for the period from April 26,1953, the date of his separation, to November 18, 1953, the date of his reemployment and report for duty.
16. Under date of June 15, 1954, the United States General Accounting Office issued to the plaintiff notice of settlement of claim, wherein the plaintiff was issued a check in net payment thereof in the amount of $54.95.
*199 17. On August 16,1954, the plaintiff, through his attorney, protested the proposed settlement and filed with the General Accounting Office an amended claim, alleging that the plaintiff was entitled to payment in the net amount of $2,388.58, after deducting the aforesaid payment of $54.95.
18. On November 12,1954, the Comptroller General of the United States rejected the plaintiff’s amended claim.
19. On December 4, 1954, the plaintiff, through his attorney, filed with the said Comptroller General a further amendment of his claim alleging that the plaintiff was entitled to recover a net amount of $2,567.68.
20. This amended claim was rejected by the Comptroller General, as stated in his letter to the plaintiff of January 31, 1955.
21. On February 28, 1954, the plaintiff transferred from his position in the National Bureau of Standards, Department of Commerce, to the Department of Agriculture, at Cincinnati, Ohio, where he is presently so employed.
22. The Department of Agriculture, under date of October 25,1955, in response to an inquiry from plaintiff’s attorney, advised that their records disclose that plaintiff was credited with 477 hours annual leave upon his transfer to the Department of Agriculture from the Department of Commerce (National Bureau of Standards).
23. Under date of October 31, 1955, the Department of Commerce advised the plaintiff as follows:
Mr. Pechette was credited with 443 hours of accumulated annual leave on July 1,1954. On February 5,1954, his then recorded balance of annual leave — 34 hours— was transferred to the Department of Agriculture. After the Bureau received G. A. O. Certificate of Settlement No. 2235823 dated June 15, 1954 as [sic] amended Becord of Leave Date Transferred was sent to the Department of Agriculture on July 1,1954. The amended record transferred a balance of 477 hours annual leave.
Hours annual leave transferred 2/5/54_ 84
Amended 7/1/54_477
Difference_ 443
The credit of 443 hours was determined from G. A. O. Certificate of Settlement No. 2235823 dated June 15, 1954.
*200 Lump sum annual leave payment Sours Amount
refunded to the Bureau- 739 $1,886.52
Annual leave payment made by
the Bureau_ 296 520. 30
Net_443 $1,366.22
The credit was made to correct Mr. Pechette’s annual leave record pursuant to the General Accounting Office Certificate of Settlement.
24. The parties agree that the evidence of record is not conclusive as to whether or not plaintiff and/or his counsel knew on May 2, 1955, that on July 1, 1954, the Department of Commerce had recredited the plaintiff’s annual leave account with 443 hours of annual leave, being a part of the 739 hours of accumulated annual leave for which the plaintiff was paid a lump sum on April 26, 1953, and the parties further agree that knowledge or lack of knowledge on May 2, 1955, of said recrediting is immaterial to the merits of the subject suit.
25. The parties agree that on or about September 26,1955, the plaintiff filed with the Collector of Internal Revenue, at Baltimore, Maryland, his claim, on T. D. Form 843, for refund of $377.30, the amount of tax that was withheld, on April 26, 1953, from the payment for his accumulated annual leave, as shown in the “Pay Roll Change Slip” and which was thereafter again withheld by the Comptroller General in making his adjustment. The parties agree that said claim for refund was disallowed on April 3, 1956.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover, and his petition is therefore dismissed.