Samuel P. LEVERETTE

v.

The UNITED STATES.

No. 47–53.

United States Court of Claims.

May 1, 1956.

956

Samuel P. Leverette pro se.

Alfred H. O. Boudreau, Jr., Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

Plaintiff, a classified civil service employee and a veteran of World War I, has brought this suit to recover sums alleged-

ly due him as a result of his employment by the Government. The case is before the court on motions by both parties for summary judgment with supporting exhibits and affidavits.

Since 1933, except for a short period of time, plaintiff has been employed in various positions in the Government. For our purposes here, however, the pertinent facts relating to that employment begin in July 1948, at which time plaintiff was employed as an Industrial Cost Accountant, Grade CAF–13, in the Renegotiation Rebate Division of the Bureau of Federal Supply in the Treasury Department. His salary at that time was $7,911 per annum. During that month the plaintiff, having completed 18 months of service at that salary, became eligible for an within-grade pay increase. He was denied that increase however, on the basis of a report by the Personnel Director of the Bureau of Federal Supply to the effect that his service and conduct were unsatisfactory. Before the completion of the next 18-month period, plaintiff was separated from the General Services Administration pursuant to a reduction-in-force action.[1] His separation was effective November 30, 1949. Upon his removal he received the lump sum of $2,273.18 in payment for his accumulated and unused leave, based on the salary mentioned. On March 14, 1950, plaintiff was ordered restored to duty by a decision by the Civil Service Commission holding that he had not received the required 30 days' advance notice of dismissal. His so-called restoration by the agency on March 14 consisted of placing plaintiff on a leave-without-pay status and then on the following day issuing another reduction-in-force notice which separated him effective April 20, 1950. Again the Commission on appeal set the dismissal aside. This one was found to be in violation of the Commission's Retention Preference Regulations because of the failure of the agency to restore plaintiff to active duty in the position from which he had been

[1]. On July 1, 1949, the functions of the Bureau of Federal Supply together with its personnel had been transferred to the General Services Administration.

separated. This the agency clearly had not done.

The agency, however, remained adamant in its desire to discharge the plaintiff. On December 15, 1950, plaintiff again found himself separated by the agency under a reduction-in-force action, and for the third time succeeded on appeal in having the Civil Service Commission set the dismissal aside. At the time of plaintiff's receipt of this third notice of separation in November 1950, his efficiency rating was "fair" making him subject to removal in the reduction-in-force action taken at that time. However, on December 7, which was after receipt of the notice of dismissal but prior to its effective date, a board of review on plaintiff's appeal raised plaintiff's performance rating to "good" and directed the agency to correct its records accordingly. Since this correction operated to raise plaintiff's retention position, the Commission found that he was immune to dismissal in the reduction-in-force action which was effective December 15. On appeal by the agency to the Commission this decision was reaffirmed and, on March 26, 1951, plaintiff was restored to his former position.

He has remained in Government employ down to the present time,[2] and with his within-grade increases and under pay raise legislation his annual salary has risen to $10,065.

Through the General Accounting Office plaintiff received the back pay which he had lost as a result of the illegal dismissals, less the amount he had received in payment for unused leave and amounts earned from outside employment. He was also recredited with the annual leave for which he had been previously paid.

Plaintiff's amended petition sets forth his claims under four counts.

In Count One he seeks to recover amounts alleged to be due him because of his failure to receive periodic step-increases to which he contends he was entitled in July 1948, January 1950, and July 1951. Plaintiff's further contention under this count that he is now entitled to a longevity step-increase, is predicated on his assertion that he should have been given the periodic step-increases on the above-mentioned dates.

In Count Two he asserts that the lump sum given him in payment of his accumulated leave was computed at an erroneous rate because of the failure to include the increases he was entitled to for periodic step-increases in July 1948, and January 1950, and that the deduction of that lump sum amount from the back pay award given him on his restoration was wrongful.

In Count Three he seeks to recover the sum of $1,026.74 representing the withholding tax withheld by the General Accounting Office in the back pay settlement. Under this count he also seeks compensation for some 35 days of annual leave which he would have earned had he not been wrongfully discharged.

In Count Four plaintiff seeks to recover $3,248.28, which amount represents an alleged loss suffered by his wife and himself because of the cancellation of second trust notes negotiated in connection with the sale of their house.

Plaintiff also asks to recover his costs and interest on the amounts claimed.

Defendant denies all liability and has filed a counterclaim against plaintiff in the amount of $570.06, although it has not in its present motion requested a judgment on this counterclaim. This amount represents interest on FHA guaranteed loans on which plaintiff and his wife defaulted.

---

2. This is not to say however that plaintiff has remained free of further dismissal controversy. In 1954, he received a reduction-in-force notice with an offer of reassignment to a like position in another city. In opposing this plaintiff secured in the United States District Court for the District of Columbia an injunction against the General Services Administrator. This injunction remained in effect for a year before it was dissolved and the District Court case dismissed. Eventually, the reduction-in-force action was rescinded.

■ ▪ Prior to December 29, 1950, an employee of the classified civil service in plaintiff's situation could not be advanced in compensation to the next higher rate within his grade until two conditions, aside from the length-of-service requirement, had been met. Those conditions prescribed by Section 402 of the Federal Employees Pay Act of 1945, 59 Stat. 295, and Section 701 of the Classification Act of 1949, 63 Stat. 954, 5 U.S.C.A. § 1121, were: (1) that his current efficiency rating was "good" or better than "good" and (2) that his department head certify that his service and conduct were "otherwise satisfactory." During this period, while plaintiff did eventually succeed in having his efficiency rating raised to the level of "good," at no time was he able to secure from anyone for whom he worked a certification to the effect that his service and conduct were "otherwise satisfactory." He secured no such certification during 1949 and 1950, and his supervisor, in June 1951, when his request for periodic increases was being reconsidered, instructed the agency's personnel director that no such certification could be granted. Thus under the statutes, supra, then applicable, plaintiff was not entitled to the periodic step-increases which he claims for July 1948 and January 1950, and we cannot give them to him.

■ While he is likewise not entitled to the step-increase claimed for July 1951, consideration of that claim presents a different situation. On September 30, 1950, the Performance Rating Act of 1950, 64 Stat. 1098, 5 U.S.C.A. § 2001 et seq., was enacted. This Act, which became effective December 29, 1950, while retaining the "good" or better than "good" requirement eliminated the "otherwise satisfactory" service and conduct certification. With the passage of that Act plaintiff became entitled to a step-increase on or about January 7, 1951, which date would have been his first pay period after the effective date of the Act. Immediately on his restoration on March 26, 1951, plaintiff received a periodic step-increase. Since the new law provided for a step-increase 78 weeks after the date

when an employee was last entitled to such an increase, it was July 1952, counting from January 1951, and not July 1951, when plaintiff next became entitled to a step-increase. At that time, July 1952, he received such an increase followed by another in January 1954, which placed him at the highest rate permitted in his grade.

■ As for plaintiff's claim that he is now entitled to a longevity step-increase, Section 703(a) of the Classification Act of 1949, 5 U.S.C.A. § 1123, supra, provides that one does not become entitled to such an increase until he has served continuously for 3 years at the maximum rate of his grade. Since plaintiff reached that maximum rate in January 1954, and assuming that he serves the 3 years, it will not be until January 1957 that he becomes entitled to the longevity step-increase.

Having found that plaintiff was not entitled to the periodic increases of July 1948 and January 1950, it follows that there was no error in the computation of the amount of the lump sum in payment of unused leave which plaintiff received on his separation on November 30, 1949.

■ Nor was the General Accounting Office's deduction of that lump sum payment in its back-pay settlement with plaintiff wrongful. Plaintiff's receipt of that payment in lieu of annual leave, as required by 58 Stat. 845, 5 U.S.C.A. §§ 61b, 61d, on his separation on November 30, 1949, was one of the attributes of his separation. When the Civil Service Commission found that separation to be null and void, and plaintiff was restored pursuant to Section 6(b) (3) of the Act of June 10, 1948, 62 Stat. 354, 355, 5 U.S.C.A. § 652(b) (3), his right to such a payment no longer existed. Thus, the defendant upon recrediting plaintiff in the amount of leave represented by the prior payment was entitled to recoup the amount of that payment.

■ Under the withholding provisions of the income tax law, 26 U.S.C. (1952 ed.) § 1621 et seq., the General Account-

ing office was entitled, if not required, to withhold an income tax from plaintiff's back-pay award. If there was error relative to that withholding, plaintiff was afforded an opportunity to correct it when he submitted his tax return for the year 1951. If not satisfied at that point, he had the remedy of challenging his tax paid on the basis of that return either by a proceeding in the Tax Court or by paying the tax and then filing a claim for refund. Plaintiff did neither.

The same statute under which plaintiff was restored bars his right to the 35 days of annual leave which he would have earned had he not been wrongfully discharged. The Act of June 10, 1948, supra, specifically provides that an employee wrongfully removed as the result of a reduction in force and subsequently restored "shall for all purposes *except the accumulation of leave*" be deemed to have rendered service during the period of separation.

The facts surrounding plaintiff's alleged loss of $3,248.28 on the sale of his house are briefly these: He and his wife sold their residence in 1948, taking as part of the consideration therefor some $3,303 in second trust notes. After making a few payments on these notes the purchasers filed suit seeking the return of all money paid, plus interest. The suit was settled upon plaintiff and his wife canceling the second trust notes. Plaintiff's position here is that having been illegally removed from his job he was financially unable at the time to take the house back by reimbursing the purchasers and thus preventing the loss occasioned by the cancellation of the second trust notes. Such a loss, if one was in fact sustained, is consequential in nature and not one for which the defendant can be held liable.

Plaintiff in his supporting briefs makes contentions which are far afield of the allegations contained in either his original or amended petition. Treating such contentions as having been properly pleaded they either, if proved, present an action in tort over which this court has no original jurisdiction or represent damages consequential in nature for which the defendant is not liable.

The plaintiff is not entitled to recover. Defendant's motion for summary judgment is granted and plaintiff's motion for summary judgment is denied. The case will be returned to the commissioner of this court for further proceedings relative to defendant's counterclaim.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN, and WHITAKER, Judges, concur.