Civilian fay; annual and sick leave payment; right to after w/oolimtary annual leave and reinstatement. — On July 12, 1965, the following order was issued:
This case comes before the court on the opinion and recommendations for conclusions of law filed herein on May 24, 1965, by Trial Commissioner Bobert K. McConnaughey under Buie 47 (c) (2) as to the amount the plaintiff is entitled to recover pursuant to the opinion entered in this case on June 7, 1963,162 Ct. Cl. 88,318 F. 2d 929. On June 18,1965, plaintiff filed a request for review of the commissioner’s recommendations wherein it is requested that pursuant to' Buie 55 (b) (3) the court review the opinion and recommendations of the trial commissioner. Defendant’s brief in support of the commissioner’s opinion and recommendations for conclusions of law was filed J une 24,1965.
The report of the commissioner having been filed pursuant to the order of the court under Buie 47 (c) (2), the court denies the request of the plaintiff that review be had pursuant to Buie 55(b) (3) and upon consideration thereof, without oral argument, the court agrees with the commissioner’s opinion and recommended conclusions of law and hereby adopts the same as the basis for its judgment in this case, and,
It Is Ordered that judgment be and the same is entered for plaintiff in the sum of one thousand two hundred fifty-eight dollars and thirty-three cents ($1,258,33), of which thirty- *678 nine dollars and seventy-one cents ($39.71) is to be credited to plaintiff’s civil service retirement and disability fund, four dollars and fifty cents ($4.60) is to be credited to plaintiff’s employee’s life insurance fund and one thousand two hundred fourteen dollars and twelve cents ($1,214.12) paid to the plaintiff.
By the Court:
James R. Dtjrfee,

Acting Chief Judge.

Senior Judge Whitaker participated in the consideration and decision of this case in place of Judge Collins who took no part therein.
The Opinion and Recommendations for Conclusions of Law filed by Commissioner Robert E. McConnaughey, are as follows:
On June 10, 1966, the plaintiff, a veterans preference eligible, then employed as a Fire Fighter with the Department of the Army, was placed on involuntary sick leave as a result of a physical examination which had led the civilian personnel officer to conclude that he was physically disqualified for work as a fireman.
The plaintiff was either on sick leave or annual leave from June 10,1956, to May 27, 1957. During that time, he drew amounts equivalent to his salary. These amounts were charged to his sick and annual leave accounts. Between May 27,1957, and June 14, 1957, he was on leave with pay every other day and on leave without pay on the alternate days. From June 14, 1957, to December 14, 1957, he was on leave without pay.
Meanwhile he had protested his proposed removal for the purported disability and his protest was receiving consideration through a succession of administrative processes.
Eventually, in November 1957, he was notified to return to work, as a result of a decision that he was not disabled and had not been incapacitated to pei'form the duties of his office when he was first put on sick leave, but was ready, willing, and *679 able to perform such, duties, not only at that time but from that time until he was restored to duty.[1]
Dissatisfied with the results of subsequent efforts to procure administrative adjustment of his salary and leave accounts, the plaintiff filed suit in this court on June 15, 1960. His petition, as amended March 27,1961, sought to recover—
* * * the salary wrongfully withheld during the period June 10, 1956 to April 2, 1957, said salary being an amount equal to the monetary equivalent of the hours of sick and annual leave wrongfully utilized during the aforesaid period, June 10, 1956 to April 2, 1957.
On June 7,1968, the court held, 162 Ct. Cl. 88,818 F. 2d, 929, that the plaintiff is entitled to recover and denied the defendant’s motion for summary judgment with respect to liability. The court did not, however, decide to what extent the plaintiff was entitled to recover. Instead, the case was remanded to the trial commissioner for further proceedings to make that determination.
On June 2, 1964, the plaintiff rejected an initial report of the General Accounting Office which purported to state the amount to which he was entitled. That report, submitted April 3,1964, in response to a call issued July 10,1963, would have required the plaintiff to pay the defendant $27.86 as a prelude to adjustment of his leave account. Meanwhile, on April 30, 1964, the commissioner had denied a motion, filed by the defendant April 16, 1964, for leave to assert two counterclaims, and the court had denied the defendant’s request for review of the commissioner’s order. Extensive, inquiries were then made by the parties into the plaintiff’s leave records and other sources of information (some of which had been sent to permanent storage), in an effort to establish the correct factual basis for fixing the amount of recovery. Negotiations seeking complete agreement upon the amount due were unsuccessful.
In the course of these inquiries, it became apparent that the plaintiff had retired on August 22, 1961, after the peti *680 tion had been filed, and, at the time of his retirement, had been paid a lump sum of $1,409.31 for 695 hours of annual leave, based on 783 hours of annual leave credited as of the beginning of the 1961 leave year, less 88 hours used in excess of the amount of annual leave accrued in 1961.
The controversy relates to the amount the plaintiff is entitled to recover, either as “compensation with respect to the position from which he was removed,” or as the monetary equivalent of sick leave or annual leave to which he was entitled upon his retirement in 1961, in addition to the payments already made to him.
On March 22, 1965, the parties filed a stipulation, entitled “Stipulation for Entry of Judgment as to Sick Leave and Stipulation of Facts Necessary for the Court to Determine the Extent of Recovery for Annual Leave.”
According to the stipulation, the parties are in agreement that the plaintiff is entitled to recover $733.14 for sick leave with pay, in substitution for 432 hours of leave without pay, and that the judgment should include that amount of which $39.71 should be credited to the plaintiff in the Civil Service Retirement and Disability Fund, and $4.50 should be credited to the plaintiff in the Employees’ Life Insurance Fund.
The part of the controversy which the parties have been unable to resolve by agreement, and which the stipulation leaves for decision by the court on a question of law, relates to the amount the plaintiff should recover as back pay or for annual leave. According to the stipulation, the plaintiff claims he is entitled to $1,103.46 for a total of 694 hours, in addition to the amount already paid on his retirement. The defendant says he is entitled to only an additional $525.19 for 259 hours of annual leave.
The following facts, pertinent to this residual legal controversy, have been stipulated:
1. On December 31,1955, the plaintiff had 1,042 hours in his annual leave account which was carried forward to the leave 1956 pursuant to 5 TJ.S.C. 2066 (a).
2. From January 1, 1956, to June 10, 1956, the date of the plaintiff’s wrongful suspension, he had accrued 161 additional hours of annual leave and had 30 hours of annual leave charged to his account.
(1,042+161=1,203 - 30=1,173)
*681 3. On June 10, 1956, the plaintiff had 1,173 hours in his annual leave account.
4. From June 10,1956, to April 1,1957, the defendant charged 998 hours to the plaintiff’s annual leave account.
(1,173-998=175)
5. From June 10,1956, to April 1,1957, the defendant credited 304 hours of annual leave to the plaintiff’s account because he was then carried in a leave-with-pay status. (This crediting of leave while the plaintiff was not working was erroneous, in light of the court’s decision and the limitation of the Lloyd-LaFollette Act,5U.S.C. §652.)
(1,173+304=1,477)
6. Compensation paid to the plaintiff from June 10, 1956, to April 1, 1957, was, in part, derived from accrued sick leave. The balance of the compensation for this period was derived from:
a. 304 hours of annual leave from the leave erroneously accrued and credited to the plaintiff during said period.
(1,477-304=1,173)
b. 694 hours of annual leave from the leave which the plaintiff already had in his account on June 10, 1956.
(1,173-694=479)
7. The plaintiff was restored to duty on November 1, 1957, and on February 1,1960, a settlement was effected by the General Accounting Office for the period April 2, 1957, to November 1, 1957. Under the terms of that settlement, the plaintiff was paid the salary due, less the amount paid for annual leave from April 2, 1957, to November 1,1957. He was recredited with 479 hours of annual leave.
8. As of the beginning of the 1961 leave year, the Department of the Army credited the plaintiff with a ceiling of 783 hours of annual leave. By the time the plaintiff retired, the 783 hour annual leave credit had been reduced by 88 hours, which was the number of hours used by the plaintiff in excess of the amount he had accrued in 1961.
(783+224=1,007-312=695)
Upon the plaintiff’s retirement, on August 22, 1961, he was paid the lump sum of $1,409.31 for the 695 hours. Said sum included basic and premium compensation.
(695-695=0)
*682 If tlie Department of the Army had credited the plaintiff with a ceiling of 1,042 hours of annual leave at the beginning of the 1961 leave year, that ceiling would have been reduced by 88 hours to 954 hours during the 1961 leave year because of the taking of more annual leave (312 hours) than he accrued (224 hours) prior to his retirement on August 22,1961.
(1,042+224=1,266-312=954-695=259)
9. The plaintiff claims entitlement to a lump sum payment of $1,103.46 for the 694 hours of annual leave referred to in paragraph 6.b., sufra.
_ The defendant’s position is that the plainaff is entitled only to a lump sum payment of $525.19 for 259 hours of annual leave, that number of hours being the difference between the 695 hours for which he was paid when he retired and the 954 hours of unused annual leave he would have had when he retired had he been credited with the full amount of 1,042 hours he could have carried over into 1961.
10. There is no evidence that the needs of the service would have prevented the plaintiff from taking the full amount of the annually accruing annual leave for each year from 1956 through and including 1961. Between June 10, 1956, and April 1, 1957, the plaintiff was not required to work for the defendant. Between June 10, 1956, and April 1, 1957, the plaintiff drew his salary.
According to the defendant, the plaintiff is entitled to recover $525.19 as the monetary equivalent of 259 hours of annual leave.
This 259 hours is the difference between 783 hours, the amount of annual leave actually credited to the plaintiff’s account at the beginning of 1961, the year he retired, and 1,042 hours which, under the Annual and Sick Leave Act,[2] is the most annual leave the plaintiff could have carried over into 1961.
The plaintiff, however, says he is entitled to $1,103.46— an amount which includes compensation for 435 hours in addition to the monetary equivalent of 259 hours of annual leave.
The plaintiff’s argument rests primarily on a statement by this court, in Leverette v. United States, 135 Ct. Cl. 207 (1956), 142 F. Supp. 955, wherein the court described, as a *683 “recoupment,” the defendant’s deduction, from an amount paid Leverette as back pay after his restoration to duty, of an amount previously paid him for annual leave following his improper removal from his position.
On the basis of the court’s statement that the defendant was entitled to “recoup” the erroneous payment for annual leave by recrediting annual leave and deducting the amount of the erroneous annual leave payment from the back pay settlement, the plaintiff has developed a theory whereby the statutory limitation on the amount of annual leave an employee mray accumulate[3] would limit, not only the amount of unused annual leave for which the plaintiff might be paid, but also the amounts paid to the plaintiff for annual leave during his improper suspension which the defendant may “recoup” by deduction from amounts to be paid as “compensation” for that period.
According to the plaintiff, under the Act of June 10,1948, 62 Stat. 354, 5 U.S.C. § 652, the amount now remaining to be paid to him is not the monetary equivalent of annual leave to his credit when he retired, but “compensation for the period for which he received no compensation with respect to the position from which he was removed,” or, more simply, back pay, for 694 hours, which he was entitled to receive during the period of his suspension but which he did not then receive ( at least nominally as salary).
He says that the amount he received for the 694 hours, during his suspension, was not “compensation with respect to the position from which he was removed,” but an erroneous payment for 694 hours of annual leave, then already accrued. Because the recovery he now seeks is back pay rather than accumulated leave, he says the statutory ceiling on the amount of annual leave that may be carried forward from year to year should not limit his recovery but, instead, should limit the amount previously paid for annual leave which the defendant may now “recoup” by recrediting his leave account and commensurately reducing the amount now paid him as back pay.
Applying the defendant’s theory that the statutory limitation on carryover of annual leave limits to 259 hours the *684 amount of annual leave that can now be recredited to the plaintiff’s leave account, the plaintiff says that the monetary equivalent of 259 hours is all the defendant can “recoup” from the amount he claims is now due to him as “compensation due with respect to the position from which he was removed.”
Thus, according to the plaintiff, payments previously made to him for 435 out of 694 hours of annual leave cannot now be recredited to his leave account and so may not be deducted from the amount now to be paid to him. Consequently he claims he is entitled to payment for 694 hours — 259 hours for leave recredited to his annual leave account and 435 hours as back pay from a “fund represented by the salary of his position.”
The plaintiff’s theory places undue weight upon the reference to “recoupment” in the Leverette case. In that case, Leverette, after being erroneously removed from his position, was restored, some months later, pursuant to Section 61 (b) (3) of the Act of June 10, 1948.[4] He continued thereafter in the employ of the Federal Government and was still a Government employee at the time of the decision.
At the time of his removal, he had been paid the monetary equivalent of his accrued annual leave. After he was restored to duty, the General Accounting Office undertook to pay him the back pay he had lost as a result of the illegal dismissal. In computing the amount to be paid to him as back pay, the amount he had already received as a lump sum payment for unused annual leave was deducted. The plaintiff claimed the deduction was wrong. This court held it was not and said that it amounted, in effect, to a “recoupment” of the amount previously paid in error as the monetary equivalent of annual leave.
But the plaintiff in the Leverette case, at the time of the decision, was still a Federal employee. He had no perfected right to receive the monetary equivalent of any amount of annual leave. The deduction, from his back pay settlement, of the amount previously paid him for annual leave was, in a true sense, merely a readjustment of the defendant’s accounts in which the amount previously paid for annual leave *685 was applied to back pay and whatever amount of annual leave he was then entitled to was recredited to his leave account.
What amount of unused leave was properly to be recredited to Leverette’s leave account was not an issue in the case. Whether it was affected by the leave ceiling and, if so, how, was not a subject of the court’s consideration or decision. There is no basis for concluding that, if the facts had been as they are here, the court would have elaborated its incidental reference to “recoupment” into the intricate theory of limited subrogation which the plaintiff advocates here.
This is a different case and Leverette affords no precedent for its decision. Here, the plaintiff has already retired. The litigation is inevitably concerned with the final settlement of his annual leave account. He is plainly entitled to be paid the monetary equivalent of the amount of annual leave properly to his credit when he retired, and he claims that amount.
The question is whether he is entitled to more than that, either in the guise of “compensation” or for annual leave.
He acknowledges that, during the period of his suspension, he received a payment for 694 hours, at the rate then applicable to his compensation. Although the payment was made, erroneously, as a payment for annual leave, its amount was the same as his salary for the same period. He also received, later, at the time of his retirement, a payment for 695 of the 954 hours of unused annual leave that should have been to his credit at that time.
The maximum amount of unused annual leave he could have had then, if he had been continuously employed, was 954 hours. If he is now paid the monetary equivalent of the additional 259 hours of annual leave that properly should have been credited to him when he retired, but were not, he will have received all he could have received as compensation, and as the monetary equivalent of the maximum amount of unused annual leave he could have had when he retired, if his employment had not been erroneously interrupted.
That, together with the agreed amount of $733.14 he is to be paid for sick leave, is all he is entitled to receive.
The problem here is somewhat akin, though not identical, to problems dealt with in McTiernan v. United States, 135 *686 Ct. Cl. 82, 85 (1956), and Zeiger v. United States, 155 Ct. Cl. 353, 356 (1961), 295 F. 2d 915. Consistently with, the principles applied in those cases, the plaintiff is entitled to the monetary equivalent of 259 hours of annual leave — the balance, as yet uncompensated, of 954 hours of annual leave to which he was entitled at the time of his retirement. He has already been paid amounts equivalent to the total of such other amounts as he was entitled to receive as “compensation.”
The parties have stipulated that the monetary equivalent of 259 hours of annual leave at the applicable rate is $525.19, and we so find. That amount should be included in his recovery.

 When the plaintiff was notified to return to work, in November 1957, he was hospitalized for an operation which had no connection with the purported cause of his original suspension from work. He actually returned to work December 16, 1957.

 65 Stat. 682, as amended by Sec. 3(c) of tbe Act of July 2, 1953, 67 Stat. 136, 137, 5 U.S.C. § 2066(a) (1958).

 Ibid.

219-965 — 66 † — 15

 62 Stat. 354, 355, 5 U.S.C. § 652(b) (3) (1958).