MaddeN, Judge,

delivered the opinion of the court:
The plaintiff sues for back pay on the ground that his discharge from Government service on May 9, 1954, was in violation of his rights under Section 12 of the Veterans’ Preference Act of 1944, 58 Stat. 390, 5 U.S.C. 861.
In 1950 the National Production Authority (NPA) was established as a separate agency in the Department of Commerce. In 1953 the plaintiff was Program Executive for Aircraft in a division of the NPA. He was officially listed as an Industrial Specialist, GS-14, at $9,600 per annum. In 1953 the Department of Commerce liquidated the NPA as a separate agency, and on July 1,1953, discharged the plaintiff in a reduction in force.
When NPA, as a separate agency, was liquidated, certain of its functions, including the work done by the plaintiff, were continued in the Department of Commerce. When the plaintiff was separated, the work which he had been doing was transferred to a Mr. Priest, then an employee in another division of NPA. Since the plaintiff’s retention rights rating placed him in Group II-A, while Priest was in Group III-A, the plaintiff appealed his discharge to the Civil Service Commission under section 12 of the Veterans’ Preference Act. The Civil Service Commission sustained the plaintiff’s appeal and on March 8,1954, ordered the Department of Commerce to restore the plaintiff “to duty and pay status retroactive to the date of his separation.” The plaintiff was on April 8, 1954, reinstated in the Department of Commerce as a GS-13 Commodity Industrial Analyst, at a salary of $9,360 per annum. He was paid the back salary for the period of his separation, and he refunded to the Government the lump sum payment for accumulated leave which he had been given when he was discharged in 1953.
As we have seen, the plaintiff was restored to duty, pursuant to the decision of the Civil Service Commission, on April 8,1954. The next day he was given a reduction in force notice, and was again discharged on May 9, 1954. During the 30-day notice period he was assigned to clerical duties.
One would suppose that, since the Civil Service Commission had decided that the plaintiff, rather than Priest, was entitled to the job in question, the plaintiff would have been *18 put back to work in the job displacing Priest, unless, possibly, the job bad been abolished in some further reorganization of the Department. The job had not been abolished, but Priest no longer held it. Priest had, in February 1954, some 20 days before the Civil Service Commission’s decision in the plaintiff’s case, been given a reduction in force notice effective March 18, 1954, which was ten days after the Civil Service Commission’s decision of March 8. Priest’s discharge was not by reason of the abolition of the job in question as is shown by the fact that the Department had, on February 8, hired still another man, a Mr. Eydlum, from the Department’s reemployment priority list, for the job. On March 8, then, the Department was under the Civil Service Commission’s order to reinstate the plaintiff in the job, Priest held the job, but was under notice of separation effective ten days thereafter, and Eydlum had been hired for the job. There was obvious need for a reduction in force.
The need was fulfilled by reducing the plaintiff out of the job, the day after, pursuant to the order of the Civil Service Commission, he was reinstated in it. The Government says, in effect, that this action was proper because the Government must go on while appeals are pending before the Civil Service Commission, and that the reemployment of Eydlum was in the normal course of government. It points out that Eydlum, once he was hired, had higher retention rights than the plaintiff, since he had 25 years of prior Government service as against the plaintiff’s ten years. The plaintiff urges that the reemployment of Eydlum was for the purpose of preventing the plaintiff’s reinstatement. The timing of events raises doubts, but we do not find it necessary to consider the question of the Department’s good faith.
Congress has given to the Civil Service Commission the power to order the specific performance of the Government’s obligation to reinstate employees illegally discharged. Section 14 of the Veterans’ Preference Act of 1944, as amended August 4, 1947, 61 Stat. 723, 5 U.S.C. 863. In the instant case the Commission ordered such specific performance. The Government urges that it could lawfully refuse to comply with the order of the Civil Service Commission because it had, while the plaintiff’s appeal was pending, rearranged the sitúa *19 tion. and hired into the plaintiff’s position a former employee with greater retention rights.
If a Court of Equity should be told that while a case was on appeal the losing party had so rearranged the subject matter of the suit that compliance with the court’s decree had been made impossible, the court would give that party cause to regret his actions.
If the plaintiff had not been illegally discharged the first time, in 1953, but had been occupying his position in 1954, Rydlum could not have “bumped” him from his position. Rydlum had been discharged in 1953, there was no proceeding pending attacking that discharge, he was simply on the Department’s reemployment priority list. No employee could be discharged for the purpose of making a position for him.
The Lloyd-La Follette Act of 1912, 31 Stat. 555, (section 6), as amended, 62 Stat. 354, 355, 5 U.S.C. 652(b) (3) provides that if a civil servant is removed in a reduction in force and, after an appeal, is reinstated on the ground that his removal was unjustified or unwarranted, he shall be compensated for the salary lost during the period of his unemployment,
and shall for all purposes except the accumulation of leave be deemed to have rendered service during such period.
If the plaintiff had served, as the statute says he shall be deemed to have served, he would have been at his own desk during the period in question, and there would have been no opportunity for the Government to have hired Rydlum and put him into the plaintiff’s job. If it had done so, it would have been a plain violation of the statutes and the Civil Service regulations. In the case of Joyce v. Scott, 265 F. 2d 369, the United States Court of Appeals for the District of Columbia Circuit gave to the statutory words “be deemed to have rendered service” their natural meaning. We see no reason for straining for some restricted meaning which, if adopted, would largely frustrate the purpose of the statutes.
Our conclusion, then, is that the plaintiff’s discharge on May 9, 1954, was illegal. He filed this suit on February 16, 1955, and of course no question of laches is raised. In the plaintiff’s petition he makes claim for certain overtime which *20 be was paid in a lump sum when be was first discharged in 1953, which he refunded to the Government when he was “reinstated” in 1954, and which was not given back to him when he was again discharged on the next day. The Government concedes liability on this item, but says the plaintiff claims nine dollars too much. The plaintiff is entitled to recover $351.12 on this item.
In the plaintiff’s petition, he claimed that when he was “reinstated” in 1954 he should have been paid back pay at the rate of $9,600 per annum, which had been the rate of the position, then graded GS-14, at the time of his first discharge in 1953. The position itself had been downgraded to GS-13, $9,360, and he was paid back pay at that reduced rate. The plaintiff now withdraws that part of his claim, in view of this court’s decision in Pechette v. United States, 145 C. Cls. 189.
After his second discharge, on May 9, 1954, from his GS-13, $9,360 position, the plaintiff on September 13, 1954, secured employment with the Civil Aeronautics Board as an Air Transport Examiner, GS-12, at a salary of $8,040 per annum. In view of our conclusion that the plaintiff’s discharge was illegal, he is of course entitled to the salary of the lost position, less his earning in other employment. The parties are in dispute as to whether the salary of the position from which he was discharged should be limited to the salary as it was at the time of the discharge, or should include statutory increases, in-grade increases, and annual leave benefits.
The Government urges us to apply the rule of section 6 of the Lloyd-La Follette Act of 1912, as amended, 5 TJ.S.C. 652(b) (3). That section says that if a civil servant is discharged, and, after appeal, is reinstated he shall be paid for the lost time “at the rate received on the date of such removal or suspension * * After the plaintiff’s second discharge, the one now under consideration, he was not reinstated. Section 6 is not applicable. Crocker v. United States, 130 C. Cls. 567; McGuire v. United States, 145 C. Cls. 17.
When the Government has wrongfully discharged an employee and then, through its own corrective procedures, *21 normally in the agency or in the Civil Service Commission, has itself righted the wrong by reinstating the employee, Congress has authorized the limitation of the Government’s liability to something less than what the liability of a private employer similarly in the wrong would be. The Government now urges us to overrule our previous decisions and to apply a statute expressly limited to situations in which an employee has been reinstated, to situations in which he has not been reinstated. And we are asked to perform this act of judicial legislation for what good purpose? To avoid subjecting the Government to the same measure of damages to which common men similarly situated are subjected. The evil does not impress us as being sufficiently ominous to justify the requested action.
As to the annual leave question, Hynning v. United States, 141 C. Cls. 486, and McGuire v. United States, supra, are in point.
Plaintiff’s motion for summary judgment will be granted and defendant’s similar motion denied. The plaintiff is entitled to judgment. The amount of recovery will be determined pursuant to Eule 38(c).
It is so ordered.
Barksdale, District Judge, sitting by designation, and Laramore, Judge, concur.