Isidore ZEIGER

v.

UNITED STATES.

No. 389–60.

United States Court of Claims.

Nov. 1, 1961.

———◆———

Clifford J. Hynning, Washington, D. C., for plaintiff.

Kendall M. Barnes, Washington, D. C., with whom was Asst. Atty. Gen. William H. Orrick, Jr., for the defendant.

JONES, Chief Judge.

The issue is how much leave plaintiff is entitled to be compensated for upon his reinstatement after wrongful discharge. The case is before us on plaintiff's and defendant's motions for summary judgment and the facts are undisputed. Plaintiff, an Army Signal Supply Agency employee, was suspended August 19, 1953, and removed as a "security risk" on August 5, 1954. On May 12, 1958, plaintiff, following appeal, was reinstated.

Plaintiff has received pay for the period of his suspension and removal. At that time he had 82 hours of annual leave to his credit. At the time of his restoration he was credited with 240 hours of annual leave, which was the total amount of unused annual leave which could be accumulated at the end of any year had he remained in the service.

It is stipulated, however, that had plaintiff not been suspended an additional 606 hours would have accrued at the annual rate of 160 hours per year during the 4 years 9½ months of his suspension, and that plaintiff might have used this leave currently had he not been removed.

Plaintiff sues for the monetary value of 606 hours of annual leave. This is the primary issue to be decided.[1] Otherwise

---

1. There is an incidental issue as to the amount constituting the money equivalent of 606 hours of leave. When plaintiff's services were terminated in May 1960, the value would vary depending on whether the value should be based on the amount

the plaintiff has been fully compensated for the period of suspension.

The plaintiff asserts that he is entitled to compensation for annual leave which would have accrued during the period of his unlawful suspension and removal and which plaintiff was prevented from using currently by the unlawful acts of defendant, and that in these circumstances the plaintiff is not required to forfeit such accrued leave. It is the contention of plaintiff that the acts of sundry officials of the Department of the Army in suspending and removing plaintiff and refusing to reinstate or restore him prior to May 12, 1958, prevented him from serving during the period of suspension and further prevented him from using the annual leave that otherwise would have accrued to him during such period.

The defendant contends that plaintiff has been fully compensated for the period of his suspension; that while he could have taken the full 160 hours of leave during each year, his actual pay would have remained the same; that if he had taken no leave during the period, his pay would have been identical to that which it would have been had he taken the leave; that he could have accumulated leave up to 240 hours and any accumulation above that amount would have been forfeited at the end of the year; that plaintiff has received full payment for each year of suspension in the exact amount that would have been paid him had he continued working, whether or not he took his annual leave; and that if plaintiff were paid for the additional 606 hours of leave he would receive more money than he would have received had he remained on the payroll during the entire period.

Both parties cite and discuss the cases of Hynning v. United States, 141 Ct.Cl. 486 (1958), Prosterman v. United States, 144 Ct.Cl. 692 (1959), McGuire v. United States, No. 383–54, decided February 11, 1959, and Vitarelli v. United States, Ct. Cl., No. 283–59, decided June 8, 1960, 279 F.2d 878. The court was divided in the McGuire and Vitarelli cases which involved somewhat similar issues to those in the instant case. In the Hynning case the court was presented with the same issue that is involved here.

Upon further consideration of the issue involved, we have reached the conclusion that the plaintiff is not entitled to recover in the instant case. A special proviso of the Act of August 26, 1950 (5 U.S.C.A. § 22–1), is as follows:

> " * * * any person whose employment is so suspended or terminated * * * may, in the discretion of the agency head concerned, be reinstated or restored to duty, and if so reinstated or restored shall be allowed compensation for *all or any part of the period* of such suspension or termination in an amount *not to exceed* the difference between the amount such person would normally have earned during the period of such suspension or termination, at the rate he was receiving on the date of suspension or termination, as appropriate, and the interim net earnings of such person: * * *."
> (Emphasis supplied.)

It will be noted that the provision for pay after reinstatement is in the discretion of the agency and the quoted provision cites the top limit on the amount which may be paid in the event of restoration.

Plaintiff has been paid every penny that he would have earned had he remained on the payroll and had taken his leave each year. At the time of his removal he had 82 hours of accumulated leave. At the time of his restoration he was given credit for the 82 hours plus enough of the leave which he would have earned in one year had he remained in the service to amount to 240 hours. This is the total amount that he could have

plaintiff was (1) earning at the date of his separation, or (2) the rate applicable to the same job at the time of reinstatement, or (3) the rate of plaintiff's compensation at the time of his separation by reduction in force in May 1960. In view of our disposition of the case it is not necessary to reach this issue.

carried over at the end of any year had he not been removed and had continued in the service. We think this meets the requirement of the statute.

Of course, had plaintiff remained in the service during the period of his suspension he could have taken 4 weeks of leave each year without any diminution in his annual pay. It is reasonable to assume that the annual leave is the period allotted for vacation and rest and relief from the labors of the other 48 weeks during which he is continually at work for 40 hours per week.

During this period of nearly 5 years' suspension plaintiff was admittedly not working for the Government. He did not earn the additional leave and certainly he was not required to work for the Government during the 4 weeks' annual rest or vacation period which he might have taken in the way of rest from his labors. In fact, during that period he was not required to do any work for the Government.

In the Hynning case, supra, we permitted the plaintiff to recover the value of leave in excess of the "ceiling" placed by the Congress on the amount of leave that might be accumulated, thus allowing greater pay than he would have received had he not been suspended.

Leave is a permissive thing, governed by statute and regulations. Subdivision (c), § 2062, Title 5 of the United States Code Annotated[2] places a maximum limit of leave that may be accumulated and states that it shall not exceed that amount. The notice of reinstatement says that the action taken is subject "to all applicable laws, rules, and regulations", and that annual leave "is authorized, subject to applicable rules and regulations concerning accumulation, use and forfeiture." [See stipulation.]

The Department denied the excess above the accumulated ceiling. The Comptroller General has also denied payment, pending further argument of the legal issues involved.

If plaintiff were paid for the 606 hours involved here, he would receive some $300 per year more than he would have received had he remained on the payroll, regardless of whether he used his current annual leave.

In so far as this conclusion is in conflict with the Hynning, Prosterman, McGuire and Vitarelli cases, supra, they are overruled. Defendant's motion for summary judgment is granted, and plaintiff's like motion is denied. Plaintiff's petition will be dismissed.

It is so ordered.

DURFEE, LARAMORE and WHITAKER, Judge, concur.

REED, Justice (Retired), sitting by designation (dissenting).

My view of the effect on this litigation of that portion of the national security legislation that provides for the allowance of compensation for wrongful discharge to any employee restored to duty after dismissal for security reasons[3] is contrary to that of the court.

That provision differs markedly from one that it supersedes in that the older statute specifically provides for compensation on reinstatement to the one discharged "at the rate received on the date of such removal or suspension * * * and shall for all purposes *except the accumulation of leave* be deemed to have

---

2. See also § 2066(a).

3. The act provides in pertinent part: "*Provided further*, That any person whose employment is so suspended or terminated under the authority of this Act may, in the discretion of the agency head concerned, be reinstated or restored to duty, and if so reinstated or restored shall be allowed compensation for all or any part of the period of such suspension or termination in an amount not to exceed the difference between the amount such person would normally have earned during the period of such suspension or termination, at the rate he was receiving on the date of suspension or termination, as appropriate, and the interim net earnings of such person: * * *." 64 Stat. 477.

rendered service during such period."[4] [Emphasis supplied.] Such a change, particularly after the earlier statute was specifically called to the attention of the committees in charge of the bill, is significant.[5]

Not only is the change significant, but the language of the presently applicable payment proviso of the act seems to me to require adjustment for accumulated leave. The reinstated employee, wrongfully deprived of his place, is to be made whole by payment of the difference between what he would have normally "earned [in Government] during the period of such suspension or termination, at the rate he was receiving * * * and the interim net earnings of such person." 64 Stat. 477.

His normal government earnings were his annual salary plus his four weeks leave calculated at the same rate daily, weekly, monthly or annually as the basic pay. The court opinion, of course, concedes that plaintiff "could have taken four weeks of leave each year without any diminution in his annual pay." From this it seems to me to follow that the "amount such person would normally have earned during the period of suspension or termination" is his salary plus the value of his annual leave. The United States has recognized by its legislation that the privilege of leave has a definite value. Title 5, § 61g(6)[6], defining the amounts to be paid the representatives of deceased employees, provides that the term "unpaid compensation" shall include:

"payment for all accumulated and current accrued annual or vacation leave equal to the compensation the decedent would have received had he lived and remained in the service until the expiration of the period of such annual or vacation leave; * * *."

From the amount which would have been earned in Government is to be deducted his earnings during the period of his governmental suspension or termination, including the value of any leave taken or authorized at his outside employment. In no other way can he be made whole for the admitted though unintentional wrong done him by the Government.

---

4. 62 Stat. 355. The whole of the relevant section, § 6(b) (1), reads:
"Any person removed or suspended without pay under subsection (a) who, after filing a written answer to the charges as provided under such subsection or after any further appeal to proper authority after receipt of an adverse decision on the answer, is reinstated or restored to duty on the ground that such removal or suspension was unjustified or unwarranted, shall be paid compensation at the rate received on the date of such removal or suspension, for the period for which he received no compensation with respect to the position from which he was removed or suspended, less any amounts earned by him through other employment during such period, and shall for all purposes except the accumulation of leave be deemed to have rendered service during such period. A decision with respect to any appeal to proper authority under this paragraph shall be made at the earliest practicable date."

5. The Chairman of the Civil Service Commission said: "Since Congress, in enacting Public Law 623, approved June 24 restored to duty after a period of unjustified removal or suspension from duty without pay for the whole of the period of such separation, it is the opinion of the Commission that the same mandatory provisions for back pay should be extended to employees who are cleared of charges of conduct considered to be detrimental to the interests and security of the United States and who are restored to employment as a result of such clearance."
This letter was set forth in both the House and Senate reports. S.Rep. No. 2158, 81st Cong., 2d Sess. 6; H.R.Rep. No. 2330, 81st Cong., 2d Sess. 7, U.S.Code Cong.Service 1950, p. 3283.

6. 72 Stat. 1761.
5 U.S.C.A. § 61(b) provides in part that: "The lump-sum payment herein authorized [for accumulated leave on separation from Government] shall not be regarded, except for purposes of taxation, as salary or compensation and shall not be subject to retirement deductions." [67 Stat. 138]. It is arguable that this lends

[10], 1948 (62 Stat. 354), recognized the need to compensate employees who are

Is not the Government's position inconsistent? It admits on the one hand that plaintiff is entitled to the amount of leave which he could have accumulated had he been employed by the Government during the period of his discharge. On the other hand it argues that he is not entitled to be credited for the value of any leave whatsoever. If plaintiff is entitled to be credited for any leave at all, he should receive the full amount. There is no warrant in the statute now in controversy for limiting the amount by the leave he could have accumulated.

I think that Hynning v. United States, 141 Ct.Cl. 486, was properly decided and would find for the plaintiff and direct the case be submitted to the Commissioner under Rule 38 of the Court of Claims, 28 U.S.C.A. to find for plaintiff on a balance of the accounts.

Dollars will not salve the wounds of this victim of administrative error but the Government's statute of atonement should not be narrowly construed to restrict his indemnification to the lowest reasonable dollar figure. Evidently from the language of the authorization for payment, the purpose was to make the vindicated civil servant whole. This requires, payment, in my judgment, for the loss of leave. I hardly think that Mr. Zeiger can be said to have been on "vacation" during the period between discharge and reinstatement.

support to the court's position; I think that it was not intended to define the amounts to be paid under the statute in controversy.