Royce **AINSWORTH**
v.
The **UNITED STATES.**
No. 269-65.

United States Court of Claims.
July 17, 1968.

James D. Hill, Washington, D. C., attorney of record, for plaintiff.

Sheldon J. Wolfe, Washington, D. C., with whom was Asst. Atty. Gen. Edwin L. Weisl, Jr., for defendant.

## OPINION

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

LARAMORE, Judge.

This case was before us on the question of liability in Ainsworth v. United States, 180 Ct.Cl. 166 (1967), wherein we granted plaintiff's cross-motion for summary judgment and denied defendant's motion for summary judgment. We held that, under the reasoning of Born v. Allen, 110 U.S.App.D.C. 217, 291 F.2d 345 (1960) and Born v. United States, 155 Ct.Cl. 821 (1961), the Federal Aviation Agency (FAA) had denied plaintiff the procedural rights to which he was entitled.

There had been a reduction in force in the Washington, D. C. area, and plaintiff's function was transferred to Oklahoma City, Oklahoma. Plaintiff was given, but refused to accept, the opportunity to transfer with his function. Plaintiff was neither informed of, nor given an opportunity to pursue, his appeal rights before the Civil Service Commission. We found that, as a veteran who had served for two years as an Accident Investigation Specialist under a temporary appointment pending establishment of a register (TAPER), his appointment was for an "indefinite" term and, therefore, he was entitled to the procedural rights provided for in section 14 of the Veterans' Preference Act of 1944, ch. 287, 58 Stat. 387, 390–391, as amended, Act of August 19, 1964, P.L. 88–448, title II, § 202, 78 Stat. 486, 5 U.S.C. §§ 861, 863, 864 (1964 Ed.). We held that his separation was improper, and the case was returned to the trial commissioner[1] pursuant to Rule 47(c)(2) for a determination of the amount

[1]. We are indebted to Trial Commissioner Franklin M. Stone for his opinion and recommended conclusion of law which, together with any necessary facts, have been incorporated in this opinion.

of recovery. Subsequently, on August 7, 1967, plaintiff was reemployed by the FAA as an Air Safety Investigator (General).

On August 31, 1967, the parties filed a Stipulation to Agreed Matters and to the Contentions of the Parties. They agreed that (1) plaintiff was restored to duty by the FAA on August 7, 1967; (2) the gross amount of back salary, inclusive of increments, to which plaintiff is entitled for the period of his separation from November 24, 1963 through August 6, 1967, totals $40,028.40; (3) the court should deduct from the $40,028.40 (a) the sum of $848.97, representing plaintiff's only outside earnings during the period he was separated, and (b) the sum of $275, representing premiums under the Federal Employees' Group Life Insurance Act of 1954, ch. 752, 68 Stat. 736, 5 U.S.C. §§ 2091–2103 (1964 Ed.) which should be credited to plaintiff in the Employees' Life Insurance Fund for the period November 24, 1963 through July 29, 1967; and (4) no amount should be deducted from said gross amount for crediting to plaintiff's Federal Employees' Health Benefits because pursuant to the Federal Personnel Manual, subchapter S8–5, Supp. 890–1, he elects not to have his prior enrollment reinstated retroactively. By deducting the $848.97 and $275, the parties agreed that, aside from the disputed items, plaintiff is entitled to a judgment of $38,904.43.

The parties stipulated that three items were unresolved. First, plaintiff claims that he is entitled to the sum of $2,042.28, representing the cash value of 240 hours of accumulated annual leave as of January 1, 1967, and 132 hours of current annual leave which he accrued between January 1 and August 6, 1967 (totaling 372 hours). Plaintiff asks the court to enter a judgment of $40,946.71 (the $38,904.43 agreed to in the stipulation plus the $2,042.28 cash value of annual leave). Defendant, as part of the stipulation, contends that the 372 hours of accumulated and accrued current annual leave can only be *credited* to plaintiff's leave account as of August 6, 1967.

Second, defendant contends that the $992.96 lump-sum cash payment which plaintiff received for 214 hours of accumulated and accrued annual leave as of the time of his separation should be deducted from the amount of the court's judgment for plaintiff.

Third, defendant contends that $915.07 should be deducted from the judgment as retroactive taxes (for the period November 24, 1963 through August 6, 1967) which defendant is obliged to collect pursuant to the Federal Insurance Contributions Act (FICA), as amended, 79 Stat. 382, 393, 26 U.S.C. §§ 3102, 3122 (Supp. II, 1964 Ed.).

Neither the stated total number of hours of accumulated and accrued leave, nor the amounts of money involved in the three items in controversy, are disputed by the parties. In essence, plaintiff contends that he is entitled to a judgment of $40,946.71 ($38,904.43 plus $2,042.28), and defendant contends that plaintiff is entitled to a net judgment of only $36,996.40 ($38,904.43 less $915.07 and less $992.96).

Following a pretrial conference both parties advised the trial commissioner that they would neither introduce additional evidence, nor file requested findings of fact, and that they would rely on the facts contained in the above-mentioned stipulation and their legal memoranda submitted in support of their respective positions. In addition, they asked the trial commissioner to close proof.

The trial commissioner closed proof by order, filed November 20, 1967. Prior thereto, plaintiff filed a motion for the entry of a partial summary judgment in the net amount of $36,996.40 (defendant admitted plaintiff was entitled to that amount). Defendant opposed the motion, and it was denied by the court, by order dated December 18, 1967.

On February 5, 1968, Trial Commissioner Stone filed his opinion and rec-

ommended conclusion of law wherein he found that (1) plaintiff is not entitled to the cash equivalent of his accumulated leave, but that he is entitled to a credit; and (2) that judgment should be entered for $36,996.40 after deducting both FICA taxes and the lump-sum payment for accumulated and current accrued annual leave paid to plaintiff at the time of his separation.

We agree with the commissioner's conclusions, but we reach the same results for different reasons.

## I.

The threshold and dispositive question presented is whether plaintiff's recovery is limited by the Back Pay Act of 1966, P.L. 89–380, § 3, 80 Stat. 95.

Section 3 of the Back Pay Act reads, in pertinent part:

Each * * * employee of an agency who, *on the basis of an administrative determination or a timely appeal,* is found, on or after the date of enactment of this Act, *by appropriate authority* under applicable law or regulation to have undergone an unjustified or unwarranted personnel action taken prior to, on, or after the date of the enactment of this Act, which has resulted in the withdrawal or reduction of all or any part of the pay, allowances, or differentials of such * * employee—

(1) shall be entitled, *upon correction of such personnel action,* to receive for the period for which such personnel action was in effect an amount commensurate with the amount of all or any part of the pay, allowances, or differentials, as applicable, which such * * * employee normally would have earned during such period if such personnel action had not occurred, less any amounts earned by him through other employment during such period; and

(2) *for all purposes,* shall be held and considered to have rendered service for such agency during such period, *except* that such * * * em-

ployee *shall not be credited, by reason of the enactment of this Act,* [*with*] *leave in an amount which would cause any amount of leave to his credit to exceed any maximum amount of such leave authorized for such* * * * *employee by law or regulation.* [Emphasis supplied.]

Plaintiff contends that the Act is inapplicable and that his recovery should be based on the Veterans' Preference Act of 1944, supra. We do not agree.

▪ The effective date of the Act is March 30, 1966. It is applicable to plaintiff whose separation was prior to March 30, 1966 and who was found to have been improperly separated by our May 12, 1967 decision.

The main thrust of plaintiff's argument is that the Act is applicable only to erroneous personnel actions which are corrected in the "course of an adverse action appeal proceeding" by an act either of an agency, or the Civil Service Commission, or by the decision of a District Court in a reinstatement action. It is inapplicable, plaintiff argues, to those cases where an employee is forced to sue in the Court of Claims for back pay because a proceeding in this court is not "in the course of an adverse action appeal."

▪▪ The Act does not refer either to a "reinstatement proceeding" or to a "decision in the course of an adverse appeal." It becomes applicable if a "proper authority" corrects an unwarranted personnel action. At issue, therefore, is whether this court is a "proper authority" which "corrects" improper personnel actions, within the meaning of section 3 of the Back Pay Act. We find that we are a "proper authority" and that our decisions do, in fact, *correct* improper personnel actions.

The Civil Service Commission's regulation, § 550.803(c), 5 C.F.R. ch. 1, subpart H (1967 Ed.—pocket part) defines the term "proper authority" as follows:

(c) The appropriate authority referred to in section 3 of the Act [Back Pay Act of 1966] and this sub-

part is the department, office or official in a department, *or court authorized under applicable law or regulation to correct, or to direct the correction of*, the unjustified or unwarranted personnel action. [Emphasis supplied.]

■■ Under this regulation each of two kinds of courts is a proper authority. A "proper authority" includes "a court authorized to *direct* the correction of" an unwarranted separation (*i.e.*, a District Court) and, also, a court *"authorized \* \* \* to correct"* improper personnel actions (*i.e.*, the Court of Claims). A District Court by its decision may direct reinstatement and thereby correct an erroneous action. Without question, we do not have authority to *direct* reinstatement. Gaines v. United States, 131 F.Supp. 925, 132 Ct.Cl. 408 (1955); Casman v. United States, 135 Ct.Cl. 647 (1956). The Act, however, is equally applicable to a proper authority which corrects an improper action.[2]

The 1966 Back Pay Act did not change the scope of our jurisdiction. See H.R.Rep. No. 32, 89th Cong., 1st Sess. (1965). We have repeatedly applied the provisions of those back pay statutes which preceded the 1966 enactment, and our power as a proper authority under those statutes to award back pay has never been questioned. See e.g., Harris v. United States, 149 Ct.Cl. 15 (1960); McGuire v. United States, 145 Ct.Cl. 17 (1959); Prosterman v. United States, 144 Ct.Cl. 692 (1959); Hynning v. United States, 141 Ct.Cl. 486 (1958); Crocker v. United States, 127 F.Supp. 568, 130 Ct.Cl. 567 (1955); O'Brien v. United States, 124 Ct.Cl. 655 (1953); Green v. United States, 109 F.Supp. 720, 124 Ct.Cl. 186 (1953). The issue in these cases was whether the statute was applicable to a particular set of circumstances.

It is clear that every decision of this court wherein an administrative agency

personnel action is found defective is one in which we correct an unjustified and unwarranted personnel determination. As Judge Whitaker observed in his dissenting opinion in McGuire v. United States, supra, 145 Ct.Cl. at p. 24–25:

It is true that it is not within the power of this court to order the Secretary of the Treasury to reinstate the plaintiff. However, the practical effect of our judgment is to put the plaintiff back on the payroll of the United States \* \* \*. He gets a judgment now for the pay he would have earned to date, and the next year he can bring another suit for his pay for that year, and so on until he is formally reinstated and discharged according to law.

We find, therefore, that this court is a "proper authority" (within the language of section 3 of the Back Pay Act of 1966) which corrects an unjustified personnel action by deciding that a separation was ineffective and awarding the injured employee back pay.

■ Plaintiff contends that even if we are a "proper authority" with power to "correct," the Act is inapplicable because he has not been reinstated by an *administrative agency* decision. It is true that the August 7, 1967 reinstatement occurred after, and was, in all probability, a consequence of, our May 1967 decision. We see no reason, however, to differentiate between employees who have been reinstated pursuant to a decision by an administrative agency and those employees who are reinstated after a decision in this court. In each instance the agency acts to correct an action which is found to have been erroneous, and in each case it is an attempt to terminate a continuing liability.

Plaintiff relies on a group of cases which interpreted earlier back pay statutes (repealed by the 1966 Act) including Crocker v. United States, supra;

---

2. The District Courts also have jurisdiction to award back pay money judgments for claims not in excess of $10,000. Act

of August 30, 1964, P.L. 88–519, 78 Stat. 699.

Harris v. United States, supra; Hynning v. United States, supra; and Prosterman v. United States,supra. In some of these cases we differentiated between employees who were reinstated and those who were not, applying the statute only in the former case. Even if those cases were applicable, plaintiff in this case was reinstated, and the back pay statute would be applicable. Moreover, to the extent that judgments may have been given in some of those earlier decisions in excess of the maximum award allowed by prior back pay statutes, they have been specifically overruled by Zeiger v. United States, 295 F.2d 915, 155 Ct.Cl. 353 (1961).

■ There is no basis for plaintiff's argument that the Act is applicable only if reinstatement occurs prior to suit in this court. We find this differentiation untenable under the Act. In addition, we considered this specific problem in Schaller v. United States, 311 F.2d 796, 160 Ct.Cl. 174 (1963). We held that the back pay provisions of section 652(b) (3) (Act of August 24, 1912, ch. 389, § 6, 37 Stat. 555, as amended, Act of June 10, 1948, ch. 447, 62 Stat. 354)[3] were applicable to an employee who had been reinstated on October 15, 1961 subsequent to, and as a result of, our decision on April 7, 1961 which had invalidated his separation. In the *Schaller* case, as in this case, the agency reinstated the employee, after we had found his separation improper, in an attempt to terminate its continuing liability. We reaffirm our conclusion in the *Schaller* decision and find that the 1966 Act is applicable whether a reinstatement occurs before or after our decision.

The distinction in some earlier cases between a reinstated and a non-reinstated employee was based on the specific wording of the applicable back pay statute. Section 6(b) (3) of the Act of August 24, 1912, as amended, supra, reads:

(3) Any person removed or suspended without pay in a reduction in force who, after an appeal to proper authority, *is reinstated or restored to duty* on the ground that such removal or suspension was unjustified or unwarranted shall be paid compensation at the rate received on the date of such removal or suspension, for the period for which he received no compensation with respect to the position from which he was removed or suspended, less any amounts earned by him through other employment during such period, and shall for all purposes except the accumulation of leave be deemed to have rendered service during such period. A decision with respect to any appeal to proper authority under this paragraph shall be made at the earliest practicable date.

The third proviso of the first section of the Act of August 26, 1950, ch. 803, § 1, 64 Stat. 476, as amended, Act of July 29, 1958, P.L. 85–568, title III, § 301(c), 72 Stat. 432,[4] reads:

* * * and if so reinstated or restored shall be allowed compensation for all or any part of the period of such suspension or termination in an amount not to exceed the difference between the amount such person would normally have earned during the period of such suspension or termination, at the rate he was receiving on the date of suspension or termination, as appropriate, and the interim net earnings of such person.

Each of these statutes (which were repealed by the 1966 Act) by its terms requires a reinstatement or restoration to duty. In both the *Harris* and *McGuire* cases the employees were not reinstated, and we refused to apply the back pay statute. Where, however, the employee was reinstated, we applied the statute. See Hynning v. United States, supra, and Prosterman v. United States, supra.

Reinstatement, albeit a prerequisite to application of prior back pay statutes,

---

3. Repealed. Back Pay Act of 1966, P.L. 89–380, § 5(1), Mar. 30, 1966, 80 Stat. 95.

4. Repealed. Back Pay Act of 1966; P.L. 89–380, § 5(2), Mar. 30, 1966, 80 Stat. 95.

may not be required under the 1966 Act. When a proper authority *corrects* the improper action the Act and its limitations seem applicable. There is no reference to, or requirement of, reinstatement in section 3 of the Act. However, because plaintiff in this case was reinstated, we need not decide any of the problems which may arise if an employee is not reinstated at any time.

█ Even if the Act is otherwise applicable, plaintiff argues that he has been rehired and was not "reinstated." We find, however, that he was reinstated. Plaintiff was separated from the position of "Accident Investigation Specialist," (position description F–4280) with the FAA. Upon his restoration to duty, he was placed in a position designated "Air Safety Investigator (General)," (position description M–50). At the time of his separation, plaintiff was a GS–11. There is no evidence in the record as to his current grade.

█ The rights which plaintiff may have had to retention preference and preference in a reduction in force apply to intra-agency transfers of functions, as well as inter-agency transfers. See Colbath v. United States, 341 F.2d 626, 169 Ct.Cl. 414 (1965). Because he was unwilling to transfer with his function, the only relief plaintiff could have obtained if all procedural requirements had been followed, would have been reassignment to a position as comparable as possible to the one he declined to follow. Where reassignment follows a reduction in force caused by a transfer of function an employee must be given an opportunity to be "reinstated" within the department or agency in a position for which he is qualified and with the same grade, if possible. Any wrongful demotion to a substitute position would give rise to a different cause of action. See Newman v. United States, 143 Ct.Cl. 784 (1958).

Plaintiff's mere statement that his current job is not the *precise* position he held before the transfer of his function does not mean that he was not reinstated. Under the circumstances presented here, it must be concluded that the position now held by plaintiff is a position equivalent to the one he had previously (pre-separation) achieved. In light of the functional transfer, the reinstatement is complete. In Pechette v. United States, 145 Ct.Cl. 189 (1959), we said at p. 193:

> The phrase "with respect to the position from which he was removed or suspended" [Act of 1948, § (6) (b)] clearly refers to the position to which the plaintiff had an enforceable right on the date of his separation. * * * Plaintiff's only right was to the GS–4 position to which he was *reinstated,* and not to the GS–9 position, which was abolished * * *. [Emphasis supplied.]

## II.

Having concluded that we are a proper authority to correct an unjustified personnel action (within section 3 of the Back Pay Act), that our prior decision did in fact correct the improper separation, and that plaintiff was reinstated, we turn now to resolve the three items disputed in the stipulation.

█ First, plaintiff claims the monetary equivalent of his accumulated leave (not merely a credit). He relies on the principles announced in Harris v. United States, supra, and Hynning v. United States, supra. Defendant contends that he is entitled only to a credit of leave. As noted above, to the extent that these decisions conflict with Zeiger v. United States, supra, they have been overruled. We find that the *Zeiger* case is controlling. Plaintiff, a *reinstated* employee, cannot recover the monetary equivalent of his leave as we have consistently held. See Paroczay v. United States, 369 F.2d 720, 177 Ct.Cl. 754 (1966); Everett v. United States, 340 F.2d 352, 169 Ct.Cl. 11 (1965); Schaller v. United States, supra; and Zeiger v. United States, supra.

The *Zeiger* case involved a claim for the monetary equivalent of the 606 hours of annual leave which plaintiff

would have earned had he not been separated. The Act of August 26, 1950, supra, then in effect, provided that the reinstated employee:

> \* \* \* shall be allowed compensation \* \* \* in an amount not to exceed the \* \* \* amount such person would *normally have earned* during the period of such suspension \* \* \*. [Emphasis supplied.]

We found that plaintiff was not entitled to recover the monetary equivalent for annual leave and said:

> Plaintiff has been paid every penny that he would have earned had he remained on the payroll and had [he] taken his leave each year. At the time of his removal he had 82 hours of accumulated leave. At the time of his restoration he was given credit for the 82 hours plus enough of the leave which he would have earned in one year had he remained in the service to amount to 240 hours. This is the total amount that he could have carried over at the end of any year had he not been removed and had [he] continued in the service. We think this meets the requirement of the statute. [295 F.2d at 916, 155 Ct.Cl. at 356.]

> \* \* \* \* \* \*

> If plaintiff were paid for the 606 hours involved here, he would receive some $300 per year more than he would have received had he remained on the payroll, regardless of whether he used his current annual leave. [295 F.2d at 917, 155 Ct.Cl. at 357.]

The provisions of the Back Pay Act of 1966 are essentially the same as those in the 1950 Act. Under the 1966 Act, a wrongfully separated employee is entitled to compensation commensurate with the amount which he "normally would have earned" during the period of his separation "if such [personnel] action had not occurred." Thus, in the Act of 1966, as in the 1950 statute, Congress authorized the recovery of back pay only to the extent that it normally would have been earned. Had plaintiff continued in government service, he would not

have received the monetary equivalent of his annual leave (except in the event of death, retirement, or termination of government service).

There is no basis for converting accumulated hours of annual leave into a monetary equivalent. In Burich v. United States, 366 F.2d 984, 177 Ct.Cl. 139 (1966), cert. denied, 389 U.S. 885, 88 S. Ct. 152, 19 L.Ed.2d 182 (1967), we said:

> \* \* \* The implicit premise appears to be that time owing to plaintiff \* \* \* may be converted into its monetary equivalent if not used up. We know of no statutory authority for such a result [366 F.2d at 990, 177 Ct.Cl. at 150].

Cf., Seebach v. United States, 182 Ct. Cl. 342 (1968).

Plaintiff, however, is entitled to a credit for the hours of annual leave. Both parties agree that the amount of hours involved is 372 (240 hours of accumulated leave and 132 hours of leave accrued for 1967).

The Back Pay Act of 1966, supra, provides that a wrongfully separated employee:

> for all purposes, shall be held and considered to have rendered service for such agency during such period, except that such \* \* \* employee shall not be credited [with] \* \* \* leave in an amount which would cause any amount of leave to his credit to exceed any maximum amount of such leave authorized for such \* \* \* employee by law or regulation.

The Annual and Sick Leave Act (Act of October 30, 1951, ch. 631, title II, § 203, 65 Stat. 679, as amended, Act of July 2, 1953, ch. 178, § 3(a), (b), 67 Stat. 137) permits an employee to accumulate and carry over a maximum of 240 hours of accumulated annual leave. Hours of leave earned in a current year which are not consumed in that year may not be carried over except to the extent that they are included in the 240 hour maximum. Federal Personnel Manual, ch. 630, subchapter 3.

Plaintiff would have earned a total of 648 hours of annual leave during the period November 24, 1963 to January 1, 1967. Between January 1, 1967 and the date of reinstatement, August 7, 1967, plaintiff would have earned 132 hours of current annual leave. Under applicable law, however, plaintiff could carry over to the calendar year 1967 only 240 hours of annual leave of the total 648 hours earned in prior years. The Act provides that the accumulated-hours maximum carryover may not be exceeded, and therefore we find that plaintiff can carry over only 240 hours of accumulated leave. (See H.R. Rep. No. 32, supra, at p. 6–7). In addition, plaintiff should be given credit for the 132 hours of current leave which would have been earned during the first seven months of 1967. Section 3 of the Act provides that for "all purposes" other than a determination of *accumulated* leave plaintiff should be "considered to have rendered service" during the period of his separation. We conclude that plaintiff is entitled to a credit of 372 hours of annual leave, as of the date of reinstatement.

The affidavit of J. Ralph Horn, submitted in open court on June 6, 1968, and uncontradicted by plaintiff, states that on September 29, 1967 he discussed the question of annual leave with plaintiff. Mr. Horn is plaintiff's supervisor at the FAA. At that time plaintiff was informed that he had 26 days of annual leave to his credit and that they must be used in the current year or they would be lost. Plaintiff chose not to use those hours of leave and, in the carryover to 1968 of a maximum of 240 hours of accumulated leave, those credited hours were lost. We find the agency's procedure appropriate and deny plaintiff any additional recovery.

Second, defendant contends that plaintiff cannot retain the $992.96 lump-sum payment paid to plaintiff at the time of his ineffective separation. We find that our decision in Leverette v. United States, 142 F.Supp. 955, 135 Ct. Cl. 207 (1956) mandates a return of the money paid to plaintiff at the time of his separation in 1963. Plaintiff in the *Leverette* case had been reinstated, and we found that when "plaintiff was restored * * *, his right to such a payment [lump-sum payment for annual leave] no longer existed." (142 F. Supp. at 958, 135 Ct.Cl. at 212.) We found that the General Accounting Office acted properly when it deducted the lump-sum separation payment from the back pay award. (Cf., Pechette-v. United States, supra.) We reaffirm our conclusion that a reinstated employee who receives a back pay award cannot retain a lump-sum payment made to him in the course of an earlier improper separation. We have found, above, that plaintiff was reinstated, and that he is entitled to a back pay judgment. Therefore, we will reduce his judgment award by the lump-sum payment of $992.96.

Third, we turn to defendant's claim that FICA taxes should be deducted from plaintiff's judgment. In Social Security Board v. Nierotko, 327 U.S. 358, 66 S.Ct. 637, 90 L.Ed. 718 (1946), the Supreme Court concluded that back pay awards were wages for purposes of Social Security Act benefits and said:

* * * we think it plain that an individual, who is an employee under the Labor Act and who receives "back pay" for a period of time during which he was wrongfully separated from his job, is entitled to have that award of back pay treated as wages under the Social Security Act definitions which defines wages as "remuneration for employment" and employment as "any service * * * performed * * * by an employee for his employer * * *." [327 U.S. at 364, 66 S.Ct. at 641.]

The Court then continued, at 364–365, 66 S.Ct. at 641:

* * * It is also true that, in requiring reparation to the employee through "back pay," reparation is based upon the loss of wages which the employee has suffered from the employer's wrong. "Back pay" is not a fine or penalty imposed upon the

employer by the Board. * * * A worker is not given "back pay" by the Board equal to what he would have earned with the employer but for the unlawful discharge, but is given that sum less any net earnings during the time between discharge and reinstatement.

In entering back pay judgments, we frequently state that a specific amount of the total money judgment will be credited to the plaintiff's Civil Service Retirement Fund. See e.g., Hanifan v. United States, 176 Ct.Cl. 1384 (1966); Leonard v. United States, 173 Ct.Cl. 1189, 1192 (1965); Clark v. United States, 170 Ct.Cl. 898, 899 (1965); Born v. United States, 155 Ct.Cl. 821, 822 (1961); and Novogroski v. United States, 154 Ct.Cl. 863, 864 (1961).

Certain government employees, such as plaintiff, are subject to FICA taxes and the Social Security system rather than the Civil Service retirement system. By analogy between the two retirement systems, we have indicated that a specific part of a back pay judgment should be paid into the FICA account of a wrongfully separated employee. See: Daub v. United States, 160 Ct.Cl. 770, 775 (1963). The underlying premise of an award of back pay is to consider the wrongfully separated employee "for all purposes" (other than those specified in the statute) as having been employed throughout the period of his separation. We, therefore, conclude that the amount of FICA taxes stipulated to by both parties, which would have been deducted if he had not been separated and which were not deducted from his outside earnings, should be paid into plaintiff's FICA account. We will enter judgment accordingly.

## CONCLUSION OF LAW

Upon the foregoing opinion, which includes the relevant facts stipulated to and undisputed by the parties which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover the monetary equivalent of accumulated and current accrued annual leave.

Judgment is entered in the sum of $40,028.40 less $848.97, representing plaintiff's outside earnings and less $992.96, representing a reimbursement to the government of the lump-sum payment to plaintiff at the time of his separation, or the net sum of $38,186.47, of which $275 should be credited to plaintiff's Employees' Life Insurance Fund account, and $915.07 should be credited to plaintiff's FICA account; the balance, $36,996.40 shall be paid to plaintiff.