Donald R. MANNING

v.

The **UNITED STATES.**

No. 294–83C.

United States Claims Court.

Dec. 20, 1984.

Larry L. Hines, Oxnard, Cal., for plaintiff.

Richard F. Silber, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant. Martha A. Klein, Washington, D.C., of counsel.

## OPINION

YOCK, Judge.

This civil pay case involves claims for overtime pay and for restoration of annual leave. The case comes before the Court on the plaintiff's motion for partial summary judgment and the defendant's cross-motion for summary judgment. For the reasons discussed below, the parties' motions for summary judgment are denied as to the plaintiff's overtime claim. However, the plaintiff's claim for reinstatement of annual leave is transferred back to the U.S. District Court for the Central District of California for appropriate future proceedings since it is determined that this Court lacks subject matter jurisdiction over this claim.

### Facts

The plaintiff, Donald R. Manning, was employed as Special Services Director at the Pacific Missile Test Center ("PMTC"), Point Mugu, California, for approximately fifteen years. As Special Services Director, the plaintiff supervised the military base recreational facilities, including the base theater, swimming pool, and certain retail outlets, and as such was in charge of a work force of approximately 70 federal employees.

While serving as Special Services Director, the plaintiff routinely worked a substantial number of hours over and beyond the regular 40-hour work week. The amount of overtime was so excessive that, in 1974, the command at PMTC sought and received an authorization for permanent standby duty pay for the position of Special Services Director. The regularly scheduled weekly tour of duty for this position consisted of a scheduled 40-hour work week of five days and 28 hours of regularly scheduled standby duty.

Further, during the period 1976 to 1982, the plaintiff was allegedly unable to take a large part of his accrued annual leave time. As a result, most of his annual leave time was cancelled in accordance with 5 U.S.C. § 6304(a), which provides that "annual leave * * * accumulates for use in succeeding years until it totals not more than 30 days * * *." Therefore, upon accumulating in excess of 30 days of annual leave, the plaintiff's annual leave was statutorily required to be reduced to 30 days. 5 U.S.C. § 6304(c).

The plaintiff used 249 hours of annual leave in 1976, 17 hours in 1977, 38 hours in 1978, 4 hours in 1979, 0 hours in 1980, and 249 hours in 1981. Two hundred hours of annual leave were restored to the plaintiff in 1978, as a result of prior litigation. The only disapproved annual leave reflected in the defendant's time records was in December of 1978. This disapproval involved 178 hours of time and was restored to the plaintiff in 1979, after the plaintiff properly requested and received a determination that he could not take the annual leave because of the exigency of the public business and after the plaintiff submitted a written request for restoration of the annual leave. During the period 1976 through 1981, the plaintiff lost a total of 899 hours of annual leave.

This action was originally filed by the plaintiff in the United States District Court for the Central District of California. However, the district court transferred the overtime and annual leave claims to this Court, since these claims appeared to seek money damages in excess of $10,000. 28 U.S.C. § 1346. In his complaint, the plaintiff requests relief in two counts. First, the plaintiff claims that he is entitled to "overtime" pay as calculated under 5 U.S.C. § 5542(a). As the plaintiff has already admittedly received the appropriate amount of compensation under section 5545(c), he requests this Court to order remittance of the difference between the amount actually paid to him under section 5545(c)(1) and the amount to which he claims entitlement under section 5542(a).

In the plaintiff's second count, he requests that this Court reinstate his lost annual leave.

The plaintiff moved for partial summary judgment on the issues of liability of the Government for his back overtime pay under section 5542(a) and for reinstatement of his lost annual leave time under section 6304. The defendant cross-moved for full summary judgment on the grounds that the plaintiff has already been fully compensated for the standby hours worked under section 5545(c)(1) and that this Court lacks jurisdiction to reinstate the plaintiff's lost annual leave.

## Discussion

### A. Overtime Compensation

Congress has, by law, provided employees with two means of compensation for work beyond the regular 40-hour work week. *Fox v. United States*, 416 F.Supp. 593, 597 (E.D.Va.1976); *Burich v. United States*, 177 Ct.Cl. 139, 144, 366 F.2d 984, 987 (1966). First, there is regular overtime pay, 5 U.S.C. § 5542, and, second, there is premium pay for either regularly scheduled standby duty, 5 U.S.C. § 5545(c)(1), or administratively uncontrollable duty, 5 U.S.C. § 5545(c)(2).

Regular overtime pay is the proper compensation for work which has been "ordered and approved" in excess of the normal 40 hour work week. 5 U.S.C. § 5542. Scheduled overtime must be compensated at a rate of one and one-half times the employee's basic hourly compensation. *Id.*

Premium pay for regularly scheduled standby duty is the proper compensation for:

> [A]n employee in a position requiring him regularly to remain at, or within the confines of, his station during longer than ordinary periods of duty, a substantial part of which consists of remaining in a standby status rather than performing work * * *.

5 U.S.C. § 5545(c)(1). The Federal Personnel Manual (FPM) defines the phrase "a substantial part of which consists of remaining in a standby status rather than performing work" in one of three ways:

> (1) When a substantial part of the entire tour of duty, at least 25 percent, is spent in a standby status which occurs throughout the entire tour;

> (2) If certain hours of the tour of duty are regularly devoted to actual work and others are spent in a standby status, that part of the tour of duty devoted to standing by is at least 25 percent of the entire tour of duty; or

> (3) When an employee has a basic workweek requiring full-time performance of actual work and is required, in addition, to perform standby duty on certain nights, or to perform standby duty on certain days not included in his basic workweek.

FPM Supp. 990–2, Book 550, S1–6d. *See also* 5 C.F.R. § 550.141 *et seq.* (1974). Further, section S1–2a(2)(k) defines a "tour of duty" as:

> [T]he hours of a day (a daily tour of duty) and the days of an administrative workweek (a weekly tour of duty) that are scheduled in advance and during which an employee is required to perform work on a regularly recurring basis.

On the other hand, 5 U.S.C. § 5545(c)(2) provides for premium pay for administratively uncontrollable duty for:

> [A]n employee in a position in which the hours of duty cannot be controlled administratively, and which requires substantial amounts of irregular, unscheduled, overtime duty with the employee generally being responsible for recognizing, without supervision, circumstances which require him to remain on duty * *.

*See Ater v. United States*, 6 Cl.Ct. 344 (1984). In either case, under section 5545(c)(1) or 5545(c)(2), the regularly scheduled standby duty or the administratively uncontrollable duty must generally be compensated at a rate of one and one-quarter times the employee's basic hourly compensation.

The plaintiff has moved for summary judgment on the overtime issue in this case on the premise that he was improperly paid premium pay for administratively uncontrollable duty under 5 U.S.C. § 5545(c)(2). Unfortunately, the plaintiff's premise is factually incorrect. The record in this case clearly reflects that the plaintiff was authorized and paid standby premium pay pursuant to section 5545(c)(1), rather than section 5545(c)(2). These two subsections apply to two entirely different categories of federal employees. Section 5545(c)(1) applies to employees that must regularly remain in a standby status as a part of their normal tour of duty. A typical example of a 5545(c)(1) type of federal employee would be a fireman, who is required to regularly standby at the firehouse in anticipation of a fire. Section 5545(c)(2), on the other hand, applies to employees that are often required to work irregular, unscheduled overtime duty in which the hours cannot be administratively controlled. A typical example of a 5545(c)(2) type of federal employee would be a criminal investigator, who is required to continue trailing a suspect after the conclusion of normal duty hours.

In approving standby pay for the position of Special Services Director at PMTC, the Navy Office of Civilian Manpower Management expressly authorized such pay pursuant to FPM Supp. 990–2, Book 550, section S1–6d.[1] Section S1–6d provides for premium pay for regularly scheduled standby duty pursuant to section 5545(c)(1), while section S1–7 authorizes premium pay for administratively uncontrollable duty pursuant to section 5545(c)(2). Thus, the plaintiff's entire summary judgment argument is based upon the wrong statutory

provision. Instead of correctly arguing section 5545(c)(1), the plaintiff is mistakenly arguing section 5545(c)(2).

The Court is, therefore, in the dark as to what the plaintiff would have argued in support of his motion for summary judgment, if anything, had he found the right law to apply to the facts. Nevertheless, the Court is reticent to grant the Government's cross-motion for summary judgment on the overtime issue, since the record reflects that the plaintiff may well have a potentially valid claim. If the plaintiff is able to prove certain facts (and apply the correct law to those facts), he may be able to recover. Thus, the Court will allow the plaintiff to have an opportunity to prove his case at trial, but will, at this juncture, deny the plaintiff's motion for summary judgment.

The Government's cross-motion for summary judgment on the overtime issue also relies on two basic premises which this Court determines to be incorrect. First, the Government argues that the plaintiff has already been fully compensated for the hours of duty at issue and that the applicable law and regulations preclude any further recovery. However, the Government fails to realize that, if it improperly authorized standby pay and/or improperly paid the plaintiff under section 5545(c)(1), the plaintiff may be entitled to recover the difference between the compensation allowed under section 5542(a) and the compensation which he admits receiving under section 5545(c)(1). The critical question becomes whether the plaintiff spent a substantial part of his entire tour of duty in a standby status.[2] While the Court is un-

1. The Court would also note that section 5545(c) requires the "head of an agency," in this case the Department of the Navy, to obtain the approval of the Office of Personnel Management (OPM) (then the Civil Service Commission) before approving standby duty pay pursuant to section 5545(c)(1). The letter of approval issued by the Navy Office of Civilian Manpower Management, dated July 31, 1974, however, fails to indicate whether such approval was ever obtained from the Civil Service Commission. If the Navy Office of Civilian Manpower Manage-

ment failed to obtain such approval before approving the position of Special Services Director for permanent standby duty pay, the subsequent payment of standby duty pay may well be unauthorized.

2. FPM Supp. 990–2, Book 550, section S1–6e, states that an employee is in a standby status: "only at times when he is not required to perform *actual work and is free to eat, sleep, read,* listen to the radio, or engage in other similar pursuits. An employee is performing actual

sure, at this point, whether the plaintiff's "entire tour of duty" should be 68 hours (40 regular hours plus 28 standby hours) or only the 28 standby hours the plaintiff worked per week, in either case, the plaintiff must prove that he spent less than 25 percent of his tour of duty in a standby status. If the plaintiff can meet this burden of proof, the mere fact that the Government paid him under section 5545(c)(1) will not prevent him from recovering the damages outlined in his complaint on this issue. In this regard, the Court takes note of the fact that the plaintiff's immediate supervisor, CDR Donald L. Drake, has indicated by affidavit that he has no knowledge of the amount of time the plaintiff spent in a standby status during each tour of duty or how much time the plaintiff spent "actually working" during such tour of duty.

■ The Government's second major premise is that, assuming the plaintiff can establish that the Government improperly authorized and/or compensated the plaintiff under section 5545(c)(1), the plaintiff is not automatically entitled to compensation under section 5542(a), since compensation under section 5542(a) must be "officially ordered or approved" before it can be paid. Here, the Government argues that none of the subject hours were ever "officially ordered or approved." Under the Government's reasoning, if the plaintiff can establish that compensation under section 5545(c)(1) was improperly paid, he would not be entitled to compensation under section 5542(a) and might even be required to repay to the Government the standby compensation he actually received from the Government. This Court feels that this is too narrow a reading of the language contained in section 5542(a). If the plaintiff can establish that the Government improperly authorized and/or paid him standby compensation under section 5545(c)(1), as

discussed above, this Court believes that the Government's conduct of regularly scheduling, in advance, the plaintiff for 68 hours of work may well have constituted the necessary order or approval required by section 5542(a).

In view of the above discussion, the Government's cross-motion for summary judgment must likewise be denied. The plaintiff is entitled to an opportunity to prove at trial, if he can, that the Navy improperly authorized and/or paid premium standby pay to him and that he is therefore entitled to recover the difference between the amount actually paid him under section 5545(c)(1) and the amount to which he would have been entitled under section 5542(a).

The Court is mindful, however, of the Government's underlying concern that, after accepting standby compensation for some six years, the plaintiff is now attempting to challenge the legitimacy of such compensation. If the plaintiff knew that the standby compensation, at the time received, was improper, he should have objected to being paid standby pay, rather than overtime pay, long before now. Such objection would have allowed the Government to reassess the propriety of continuing to pay the plaintiff standby compensation pursuant to section 5545(c)(1) and to correct any errors which it may have initially made in authorizing permanent standby pay for the position of Special Services Director. Thus, the Court will seriously weigh the plaintiff's apparent decision *not* to object to being paid standby pay in any future proceedings.

B. Reinstatement of Annual Leave

■ It is a rudimentary requirement, in establishing jurisdiction in the U.S. Claims Court, that the claim asserted be one which, if successful, would entitle the plaintiff to a recovery of actual, presently

work, rather than being in a standby status, when his full attention is devoted to his work, even though the nature of his work does not require constant activity (for example, a guard on duty at his post and a technician continuously observing instruments are engaged in the actual work of their positions). Actual work includes both work performed during regular work periods and work performed when called out during periods ordinarily spent in a standby status."

due, money damages. *United States v. Testan,* 424 U.S. 392, 397–98, 96 S.Ct. 948, 952–53, 47 L.Ed.2d 114 (1976), *citing United States v. King,* 395 U.S. 1, 2–3, 89 S.Ct. 1501, 1501–02, 23 L.Ed.2d 52 (1969). The plaintiff in this litigation, however, seeks restoration of forfeited annual leave. As a result, this is not a claim, even if sustained, which would entitle the plaintiff to money damages. There is no statutory authority to convert accrued annual leave into its monetary equivalent. The only two instances in which an individual may obtain a lump sum payment for accrued annual leave are: (1) upon separation from federal employment, *see Lindsey v. United States,* 214 Ct.Cl. 574, 566 F.2d 1190 (1977), or (2) upon entry into a position excepted from the application of the annual leave provisions. *See* 5 U.S.C. §§ 5551–52. The plaintiff does not fall within either of these two exceptions. Further, this Court has consistently held that "[t]here is no basis for converting accumulated hours of leave into a monetary equivalent." *Ainsworth v. United States,* 185 Ct.Cl. 110, 123, 399 F.2d 176, 184 (1968). *See also Montalvo v. United States,* 231 Ct.Cl. 980 (1982); *Burich v. United States,* 177 Ct.Cl. 139, 366 F.2d 984 (1966). Thus, this Court lacks subject matter jurisdiction over the plaintiff's claim for restoration of his annual leave.

The jurisdictional statutes cited by the plaintiff, in support of this count in his complaint, fail to confer the necessary jurisdiction on this Court. Nowhere in the statutes cited by the plaintiff is there a provision for converting accumulated hours of annual leave into money due and owing.

In *Burich,* the plaintiff claimed additional overtime compensation and "compensation due and owing to him for 'annual leave forfeited due to necessary work * * * *' and 'time allowed for such leave * * * earned but unused * * * *'." *Burich v. United States, supra,* 177 Ct.Cl. at 150, 366 F.2d at 991. The court, however, decided that "neither of these allegations supports a claim to overtime compensation." *Id.* In its conclusion, the Court of Claims held that:

The matter of leave accumulation is, as defendant points out, the subject of statutory regulation and not administrative discretion. If plaintiff elected not to use his annual leave, he could accumulate it—up to a maximum of 30 days. Beyond that, accumulation is prohibited. But, in no event, could this prohibition constitute the basis of an actionable claim.

*Id.*

The plaintiff, in his opposition to the defendant's cross-motion for summary judgment, relies upon *Carman v. United States,* 221 Ct.Cl. 165, 602 F.2d 946 (1979), for support that this Court has jurisdiction over the plaintiff's forfeited annual leave claim. *Carman,* however, is inapposite to the current litigation as there is missing in this case a sufficient nexus between the plaintiff's forfeited annual leave claim and his claim for additional overtime. In *Carman,* both claims concerned entitlement to benefits under the same statute, 50 U.S.C. App. § 459, and both claims arose from the same event, the plaintiff's departure and return to employment with the Federal Bureau of Investigation. *Carman v. United States, supra,* 221 Ct.Cl. at 168–69, 602 F.2d at 949. In considering whether it had jurisdiction over the plaintiff's leave claim, the *Carman* court stated that:

There is no question that if plaintiff's sick leave were the sole claim before the court, we would not have jurisdiction over it. Sick leave is credited to an employee's account on the basis of a certain amount of leave per pay period. 5 U.S.C. § 6307. The mere crediting of sick leave to an employee's account, however, confers no present right to payment, but, instead, only confers the right to the continuation of pay and employment benefits upon absence due to illness and potential credit for retirement benefits.

\* \* \* \* \* \*

Where no money damages are presently due and owing, this court does not have jurisdiction over such a claim standing alone, *Jankovic v. United States,* 204

**134**

Ct.Cl. 807 (1974), for any judgment would be in the nature of a declaratory judgment which this court has no power to grant in this situation. *United States v. King,* 395 U.S. 1 [89 S.Ct. 1501, 23 L.Ed.2d 52] (1969).

*Carman v. United States, supra,* 221 Ct.Cl. at 168, 602 F.2d at 948. Finally, the court concluded that it would only have jurisdiction over the plaintiff's sick leave claim, "if a proper nexus exists between the back pay claim and the sick leave claim." *Carman, supra,* 221 Ct.Cl. at 168, 602 F.2d at 949.

█ Here, however, the plaintiff has pleaded two factually and legally distinct claims. The statute, which the plaintiff alleges serves as the basis for his entitlement to additional overtime compensation, 5 U.S.C. § 5542, does not confer any entitlement to annual leave or to restoration of forfeited annual leave. Although the two claims may be chronologically intertwined, the events which give rise to the overtime claim are distinct from the events which give rise to the plaintiff's annual leave claim. There is simply no nexus between these two claims, a critical factor in the *Carman* court's finding of jurisdiction over a related restoration of sick leave claim. *Id.*

Accordingly, this Court determines that it lacks subject matter jurisdiction over the plaintiff's claim for reinstatement of his forfeited annual leave.

In his reply brief to the defendant's cross-motion for summary judgment, the plaintiff has argued for transfer of the annual leave claim back to the district court, in the event that this Court determines that it lacks jurisdiction over such claim. As justification for such request, the plaintiff has stated that he intends to seek declaratory relief in the district court. Since this Court lacks jurisdiction, it appears, in the interests of justice, that this claim should be transferred back to the district court for whatever future proceedings may be deemed appropriate. 28 U.S.C. § 1631.

CONCLUSION

For the reasons stated above, the parties' motions for summary judgment are denied as to the plaintiff's overtime claim (Count I). However, the plaintiff's claim for reinstatement of annual leave (Count II) is hereby severed and transferred back to the U.S. District Court for the Central District of California for appropriate proceedings, since this Court lacks subject matter jurisdiction.

On July 26, 1983, the Court issued its Rule 16 order governing future proceedings before this Court. The parties will now proceed as to the overtime claim in accordance with that order, with the plaintiff's initial submission (paragraph 1) due on or before February 19, 1985.